WINNIPISEOGEE LAKE COTTON AND WOOLEN MFG. CO. *v.* GILFORD.

64 337
66 564
64 337
s67 516
s67 517

Rights in a reservoir of water are real estate, and taxable in the town where the land by which the reservoir is created is situated.

Upon the question of the value of such rights, evidence that they may be exercised for the benefit of mills situated in other towns or in another state is competent.

APPEAL, from a refusal of the selectmen of Gilford to abate a part of a tax assessed by them in 1884. Facts found by referees. The value of the plaintiffs' property. described in the petition and taxable in Gilford in April, 1884. is two hundred and seventy-five thousand dollars ($275,000). The value of other property in Gilford, compared with its assessed value in April, 1884, was in proportion of 100 to 65, or other property was assessed in said town at that date at 65 per cent. of its value. The rate of taxation was one dollar forty-two and one half cents on a hundred dollars. The value of the plaintiffs' mills, other buildings, and estates in fee in said Gilford (not including dams, gates, flowage and reservoir rights, etc., in said town hereinafter estimated) is one hundred thirty-five thousand dollars ($135.000). The value of the plaintiffs' dams, gates, and flowage and reservoir rights in said Gilford is one hundred forty thousand dollars ($140,000).

In ascertaining the value of the dam, gates, and flowage and reservoir rights of the plaintiffs in Gilford on the first day of April, 1884, the referees took into consideration that this property in Gilford has greater value because it can be controlled and profitably used in Gilford by the plaintiffs for the benefit of mills situated elsewhere. and also that the market and taxable value of said mills, and other estate and property of the plaintiffs situated elsewhere, is increased by reason of these reservoir rights being capable of being controlled for their benefit; and in finding the value of said reservoir rights situate in Gilford, the referees made such adjustment and apportionment of these valuable incidents or advantages between the plaintiffs' reservoir rights at Gilford and the mills and other estate and property of the plaintiffs situate elsewhere benefited thereby as seemed to them lawfully and justly to belong respectively to each class of said property, and as should avoid any double taxation.

It appearing that contracts existed between the plaintiffs, as owners of these reservoir rights in Gilford, and certain mill-owners having privileges on the stream below (which contracts may be referred to), the referees, in estimating the value of these reservoir rights in Gilford, took into consideration the pecuniary advantages and disadvantages to this property by reason of these contracts.

The plaintiffs moved to recommit the report to the referees, with

instructions to report any facts that either party may request, that they find proved on the evidence now before them. Motion denied, subject to exception. The question of law that the plaintiffs desire to raise on the report is, the right of the referees to consider the fact that the Gilford property is enhanced in value because it can be controlled and profitably used there by the plaintiffs for the benefit of mills elsewhere. If this question is not fully presented by the foregoing statement of facts, any question of discretion raised by the plaintiffs' motion to recommit is reserved.

At the law term the plaintiffs moved to recommit the report to the referees, with instructions to report the following additional facts if they found them proved:

1. The mills "situated elsewhere," for the especial benefit of which these reservoir rights are controlled, are situated in Lowell and Lawrence, Mass. The enhanced value of the Lowell and Lawrence mills, by reason of these reservoir rights being capable of being controlled and being actually controlled for their benefit, is fully included in the assessment of the mills in Massachusetts, and is fully taxed in Massachusetts, without diminution on account of any taxation (or liability to taxation) of the reservoir rights in New Hampshire. The reservoir rights, and the rights of control thereby exercised, are fully taxed in Massachusetts where the benefit from the control is received.

2. The plaintiffs own no mills elsewhere than at Gilford in any way affected by the management of this property.

3. The stock of the plaintiff corporation is owned entirely by the proprietors of the locks and canals on the Merrimack river, at Lowell, Mass , and by the Essex Company, of Lawrence, Mass., both of them corporations under the laws of Massachusetts. The stock of the Locks and Canals Company is entirely owned by ten manufacturing corporations of Lowell.

4. Under the agreement with other riparian owners on the Winnipiseogee river, referred to in the report of the referees, it is found that on an average of a series of years eighty-eight per cent. of the available supply of water from the lake in its improved condition is used as a uniform flow in the Winnipiseogee river, and the remaining twelve per cent. is discharged from the lake in such quantities and at such times as will best serve the interests of the stockholders of the plaintiff corporation. The natural supply from the lake in its improved state is always sufficient to furnish the above uniform flow for the Winnipiseogee river, and the amount of additional supply varies from year to year, being twelve per cent. on an average, and is contingent upon the variation in the natural supply.

5. The plaintiff corporation was first chartered in 1831. The charter was amended in 1846. Both acts may be referred to in argument. The stockholders of the plaintiff corporation are the proprietors of the locks and canals on the Merrimack river, in

Lowell, Mass., and the Essex Company, of Lawrence, Mass., both of them corporations under the laws of that state.  The stockholders of the Locks and Canals Corporation are ten manufacturing corporations of Lowell.  Soon after the amended charter in 1846, the plaintiff corporation commenced excavations and improvements at the outlet of Winnipiseogee lake and on Winnipiseogee river; and they were continued until brought substantially to their present condition in 1851, and have so remained from that time to the present.

The report was not recommitted; but the plaintiffs' motion was considered as an offer to prove the facts therein stated.

*Daniel Barnard* (with whom were *T. J. Whipple* and *Jeremiah Smith*), for the plaintiffs.

*W. E. Buck*, for the plaintiffs.  By the original charter of the plaintiff corporation, granted in 1831, the purposes of the company were limited to carrying on various manufacturing operations at what is now known as Lake Village, by means of the water-power there. which is now owned and controlled by them.  The company maintained a corporate existence for fifteen years under this charter, when, in 1846, the charter was so amended as to empower them to improve the water-power of the Winnipiseogee, Pemigewasset, and Merrimack rivers, make contracts with other riparian owners, etc., and since that time they have operated under the amended charter.  After improving the outlet of Winnipiseogee lake and the power at Lake Village to a sufficient extent to enable them to control most of the flow of Winnipiseogee river, contracts were made with the other mill-owners on said river, by which a certain uniform flow must be maintained in the river at all times; and under these contracts 88 per cent. of the available supply of water from the lake, in its improved condition, is used for this purpose.  This constitutes in great measure the improvement of the water-power of the Winnipiseogee river, and incidentally an improvement of the water-power of the Merrimack river, and is entirely independent of the ownership of this Gilford estate. It matters not who may own the stock of this plaintiff corporation, or who may own this estate, these contracts must be fulfilled, and the advantages arising from them, to any and all riparian owners from Gilford to the Atlantic, are as fixed and determined as if they came entirely through the operations of nature.  The remaining 12 per cent. of the available supply from the lake is discharged in such quantities and at such times as will best serve the interests of the stockholders of the plaintiff corporation, *i. e.*, in such manner as to improve the water power of the Merrimack river; and this constitutes the direct improvement of the Merrimack river water-power by the operations under this charter.  In the appraisal of the Gilford estate of the plaintiffs, the referees have divided it into

two items.   The first includes the entire value of the estate for all purposes of local use and enjoyment, without reference to any other estates.   The second item, $140,000, is based entirely on increased values of the Lowell and Lawrence estates, and is wholly wrong.

1. It places that amount of tax in Gilford on a portion of the values of estates in Lowell and Lawrence.

The referees say that in making this estimate of $140,000 on the dam, gates, and flowage and reservoir rights, they consider that the mills and other estates of the stockholders of the plaintiff corporation, situated in Lowell and Lawrence, are increased in value by reason of these reservoir rights being capable of being controlled for their benefit.   The item does not include any part of the value of the plaintiffs' mills; and as the dam and the easements incident thereto can have but a very small local valuation, after leaving to the mills the water-power incident to them, it is evidently based entirely upon the increase of values in the Lowell and Lawrence estates.   It cannot include the water-power of the plaintiffs' mills, since that must be appraised with the mills themselves.   Eighty-eight per cent. of the water-power of this dam is therefore included in the first item.   This eighty-eight per cent. of the water-power must go to Lowell and Lawrence in precisely the same way it now goes, no matter who owns the Gilford estate.   It is incident to the mills themselves, and can only be appraised with the mills as appurtenant to them.

The only reasonable interpretation of the report therefore is, that the first item includes all the mills and other estates and eighty-eight per cent. of the water-power, and shows their full local value; and the second item includes the dam, gates, flowage and reservoir rights, and twelve per cent. of the water-power, and is based entirely upon increased valuations of the Lowell and Lawrence estates. This amounts to a transfer of $140,000 of valuation from estates in Lowell and Lawrence to this Gilford estate for purposes of taxation.   In fact, the report would only be changed in language, and none at all in meaning, by saying the true value of this Gilford estate in itself is $135,000, but as certain uses to which it is put increase the value of certain Lowell and Lawrence estates, and these latter estates are owned by the stockholders of this plaintiff corporation, $140,000 of the value of those estates should be added to this and taxed in Gilford.   To say that estate A is appraised higher because estate B is increased in actual value by certain uses of estate A, is the same as saying that a portion of the value of estate B is included in the valuation of estate A.

Because a certain estate is absolutely necessary to its owner for certain uses and purposes to which he devotes it, is no reason for adding to its taxable value; and if those uses largely enhance the value of other estates, the enhanced values are in the other estates, and not in the original estate itself.   Suppose A to own a reservoir of water in Gilford worth $10,000, as a mill-site in Gilford, and by

means of that reservoir to supply his mill-plant in Laconia, worth $300,000, with a uniform water-power. This reservoir supply is absolutely necessary to him, and the Gilford selectmen appraise his property in that town at $30,000. On petition for an abatement, the referees find the true value to be $21,000. The owner then sells the Gilford estate to B for $10,000, its value as a mill-site, under the restriction that B shall discharge uniformly from the dam a certain quantity of water sufficient to run A's mills at Laconia, and reserving a right of entry on B's default of the covenant. A cannot now be taxed in Gilford at all, as he owns no property there; and B can only be taxed for $10,000 in Gilford, for that is all he owns there : it is all he gave for it, and all it is worth. It is evident that the referees simply transferred $11,000 of valuation from Laconia to Gilford. The principle of the present finding is the same, and by it $140,000 of valuation is transferred from Lowell and Lawrence to Gilford, to be taxed there; and a greater or less amount of complication in the details in no way mitigates the error in principle. The conclusion is inevitable, that the valuation of $140,000 in the second item of this report is a valuation on Lowell and Lawrence estates, and not on the Gilford estate itself.

2. It is based entirely upon what the referees estimate the estate to be worth to the present owners.

If the owners of this Gilford estate had no interest in the Lowell and Lawrence estates whatever, it is evident that this second item of valuation would have no place in the report. If citizens of Gilford owned the estate, no one would think of attempting to tax them higher than its local value because Lowell and Lawrence estates are increased in value by its use. No attempt is made in this case to tax this property higher on the ground that Manchester, Franklin, Tilton. and Laconia estates are increased in value by its use, though the fact of such increase is as evident as any increase at Lowell and Lawrence. The estimate is based upon the common ownership of the estates, and is an estimate which would not be made if any other parties owned the property in question. Hence it is an estimate of what the referees consider the property worth to the present owners.

3. It is found contrary to the express instructions of the statute.

The statute says,—" The selectmen shall appraise all taxable property at its full and true value in money, as they would appraise the same in payment of a just debt from a solvent debtor." Suppose the mills, buildings, and other estates in fee of the plaintiffs to be set off on execution in payment of debt to the amount of $135,000, and the dam, gates, flowage, and reservoir rights of said plaintiffs set off in payment of another debt to the amount of $140,000. The mills, of course, are set off with the water-power incident to them, and hence the first item takes eighty-eight per cent. of the water-power of the dam; and the second claim has only the dam and twelve per cent. of the water-power to satisfy it.

Such an estate would have no such value as placed upon it by this report. In fact, the dam, gates, flowage and reservoir rights, and the twelve per cent. of surplus power, contingent as it is shown to be upon the variations of natural supply, would be practically worthless to any owner, hampered as it would be by the claims of all the mills for the water-power belonging to them.

4. The property and interests considered in fixing the taxable value of real estate should not be more extensive than the fee of the estate in question will convey.

A deed of the Gilford estate will convey no interests in Lowell and Lawrence, and cannot pass any increased values of Lowell and Lawrence estates, however much they may depend on this estate. The valuation includes $140,000 which cannot be sold and deeded with the estate. It includes that amount of valuation which no purchaser can find there. The property and interests considered in this valuation are greater, therefore, than the fee of the estate will convey.

We are familiar in New England with the use of streams for water-power, but in other sections of the country they have a different but equally valuable use. Suppose the conditions of climate and soil in the Winnipiseogee valley to be like those of many portions of our extreme Western states, and that a few men purchase, for a nominal sum, $6,000 acres of arid lands along the river in Laconia, Tilton, and Franklin, and form an irrigation company. The company purchase the banks of the Winnipiseogee river, in Gilford, for a short distance above the Laconia town line, and erect upon this estate a dam and canal (the entire cost of the company's plant being $10,000), by means of which they divert the water of the river, and irrigate their lands in the lower towns, making them very valuable and productive. The natural conformation is such that this estate in Gilford is absolutely necessary for the accomplishment of this purpose, but it has no value beyond its cost for any other use. The irrigation company own the Gilford estate, and its stockholders own the farms below, which are worth, in their improved condition, $50 per acre, or $300,000. The value of these farms should be taxed in Laconia, Tilton, and Franklin, and no part of their value in Gilford; and Gilford would not be entitled to tax on this dam any part of the value of the farms below. The entire value of the farms may depend upon the dam, but it is, nevertheless, in the farms themselves, and should be taxed there. There is no reason for taxing a part of that value on the Gilford dam that does not apply with equal force to all of it, since all the value is dependent on the dam. Whatever value the Gilford estate has in itself is a proper subject for taxation in Gilford. It may be worth $5,000 for a water-power, and if so is taxable to that extent; but if the selectmen of Gilford be allowed to take into consideration the increased values of the farms below by the use of this estate, they have just as much reason to tax in Gilford the entire value of

the farms as they have to tax ten per cent. or any fractional part of it in that town. If the Gilford estate were a reservoir, and the estates below hydraulic mines of great value, the same illustration would hold good. Transforming also the farms of Laconia, Tilton, and Franklin to mill-sites and manufactories, and using the water for power at these places, brings us to the case under consideration. In both instances the fee of the Gilford estate does not carry with it the interests which are considered in its appraisal. It is a question worthy of serious consideration, whether or not it is ever either necessary or justifiable for the selectmen to take into consideration any estates, outside the limits of their own town, in the appraisal of those within the town, except by way of analogy. Farming lands divided by a town line may present cases where this is necessary to a certain extent, but under all ordinary circumstances it would be wrong.

5. The courts of Massachusetts have uniformly decided against this finding.

In *Pingree* v. *County Commissioners of Berkshire*, 102 Mass. 76, one Thomas P. Pingree, as trustee for certain mill-owners in Dalton and Pittsfield, held land, dam, etc., in Windsor, which constituted a reservoir for the supply of the Dalton and Pittsfield mills. *Wells*, J., says,—" We are satisfied that the land in this case, and the dam erected upon it, are taxable as real estate in Windsor; that the valuation should be made, not subject to the use to which they are for the time appropriated, nor independently of that use in any sense which excludes it from consideration as a means by which their value is made available, but in the same manner as the mills and water-wheels are to be valued. *Boston Water-Power Co.* v. *Boston*, 9 Met. 199–204. No part of the value of the water-power, as such, is to be included in the valuation of either; but the capacity of the property for valuable use is not to be excluded from consideration for the reason that it is so limited in the purpose or mode of its use as to be of only nominal value independently of its use in a particular mode or for a particular purpose. The valuation in the present case is such as to give no ground for the supposition that it included any part of the value of the water-power, or that it is other than a fair and reasonable estimate of the land and structure erected upon it. The tax, therefore, is rightly assessed, and the petition is accordingly dismissed."

There is no distinction between taking into consideration the increased values of other estates below, and including a part of the value of the water-power used with the mills below, for the increased values can only arise from an increase of water-power, and the increased values are a part of the value of that water-power.

In *City of Fall River* v. *County Commissioners of Bristol*, 125 Mass. 567, was involved the question of an assessment against the Watuppa Reservoir Company. The stockholders of this company were several manufacturing companies in Fall River, owning

water-power upon Fall river, and stock in the Watuppa Reservoir Company in proportion to the number of feet fall at their respective privileges on Fall river. The Troy Cotton and Woollen Manufactory owned the land at the outlet of Watuppa ponds, and the Reservoir Company, by license from them, erected thereon a dam to flow the ponds two feet higher than they had been previously flowed, purchased the necessary flowage rights, and regulated the water by said dam in the common interest of the stockholders of the Reservoir Company. The city of Fall River, by their assessors, made an assessment on the Watuppa Reservoir Company for " reservoir of water used to maintain a uniform supply of water for mill purposes, with the dam connected therewith, and the land under the same." On application to the county commissioners the tax was abated, and the city of Fall River then petitioned the court for a writ of certiorari, which petition was denied, the court holding that reservoir rights are not taxable real estate, and the Watuppa Reservoir Company had no taxable real estate in Fall River.

6. By a decision of the Massachusetts courts, and by the amended statement of facts in this case, it is shown that the full values of the Lowell and Lawrence estates are taxed in Massachusetts.

The amended statement of facts is clear upon this point, and needs no comment. *City of Lowell* v. *County Commissioners of Middlesex*, 6 Allen 131, was a petition for a writ of certiorari to quash the proceedings of the county commissioners, in abating a tax assessed against the proprietors of the locks and canals on Merrimack river, by the city of Lowell, in the year 1860. The tax was assessed upon the following description of estate: "Land adjoining and bordering on the canal, with gate-houses, feeders, and mason work, and all the canals owned by the proprietors of the locks and canals within the city of Lowell, with the exception of the Pawtucket canal and its appurtenances, $300,000." It appeared that all the permanent water-power furnished by the canals, etc., was used by the mills, and was taxed with them in the form of an additional value which they possessed by virtue of their permanent water-power. But nine months in the year there was a surplus power capable of profitable use, and this made the property a proper subject for taxation. The county commissioners were therefore in error in making an abatement of the entire tax, as they did. *Hoar*, J., says,—" But the assessors had not taxed any water-power, *eo nomine*. They had taxed land, and structures upon land. If the water-power enjoyed by the several mills, and increasing their value respectively, which was already taxed as a part of the value of the mills, had exhausted the whole productive capacity of the land and structures by which it was created, they should not have been taxed further. But as the agreed facts show that a valuable water-power for nine months in the year was created, in addition to all that was used by the mills, there still remained a taxable property which

had not been assessed in any form. The land occupied by the canals, and used in connection with them, should be taxed to its owners, so far as its productive value had not been made a subject of taxation as an element of the value of the mills to whose use the water-power was appropriated. In other words, if the property taxed had a market value above and beyond its use for the purposes of the mills,—if it would sell for any price, subject to the obligation to furnish power to the mills according to their contracts,—then to that extent it was not taxed in another form, and should be taxed in the mode adopted by the assessors of Lowell." Lowell must tax the entire water-power at Lowell; and the Lawrence water-power, under the same jurisdiction, is necessarily taxed in the same manner. It is impossible to tax any portion of the value of these water-powers elsewhere, without a double taxation upon them; and it is equally impossible to take into consideration any part of their value in fixing the taxable value of other estates, without a double taxation to the extent that such values are taken into consideration.

7. This court has no jurisdiction over the water-power of Massachusetts.

Whatever water-power is used with mills situated in Massachusetts becomes annexed to those mills, and is to be taxed with them, without regard to the sources of such power; and even though the structures which are necessary to create the power lie in part in another state, and the water-power might equally well be used in that other state, nevertheless, it must be taxed with the mills to which it is incident, and not elsewhere. In *Boston Manufacturing Company* v. *The Inhabitants of Newton*, 22 Pickering 22, it appeared that the Boston Manufacturing Company owned a dam half in Waltham and half in Newton, but the entire water-power was used with mills in Waltham, though it might have been used on the Newton side had the owners chosen to do so. Newton assessed the company for one half the water-power of the dam; and on trial of this issue, *Shaw*, C. J., says,—"The only question in this case is, whether the town of Newton have a right to tax the plaintiff for the property, and under the circumstances mentioned in the agreed statement of facts. In the first place, the court are of opinion that water-power for mill purposes not used is not a distinct subject of taxation. It is a capacity of land for a certain mode of improvement, which cannot be taxed independently of the land. But the objection to this mode of taxation is not the only or principal objection to the tax in question. The court are of opinion that the water-power had been annexed to the mills, that it went to enhance the value of the mills, and could only be taxed together with the mills, as contributing to increase their value. As the mills were wholly situated in Waltham and were taxable there, they were not liable to be taxed in Newton."

This shows that if the Merrimack river at Lowell constituted

the division line between Massachusetts and New Hampshire, and the water-power of the Lowell dam was all used in Massachusetts, none of its value could be taxed in New Hampshire, even though its very existence depended upon structures erected in New Hampshire. No more can any part of that value be taxed in New Hampshire if it depends upon structures higher up on the same stream, and within the state of New Hampshire. The language of the court, in *Slack* v. *Walcott*, 3 Mason 508, is strongly to the point. *Story*, J., says,— " The mill in controversy is situated in Massachusetts ; the river, the use of whose waters is claimed as appurtenant to the mill, is the boundary of the two states, and the waters, therefore, partly flow in each state. The right, however, is not a distinct right to the water, as *terra aqua coöperta*, or as a distinct corporeal hereditament, but as an incident to the mill, and attached to the realty. It passes by a grant of the mill, and has no independent existence. It is not real estate situated in Rhode Island. It is an incorporeal hereditament annexed to a freehold in Massachusetts ; and a conveyance of the mill, good by the laws of the state where the mill is situated, conveys all the appurtenances." And further on, in the same opinion, he says,—" The public law, which declares that the title to real estate can pass only according to the law of the place where it is situated, supposes the thing to be tangible and fixed, and the *situs* clearly intraterritorial. But where is the *situs* of an incorporeal right ? The right to flowing water is no more real estate, than the right to flowing air or light. The very nature of these things forbids durable, fixed, and absolute territorial possession. It is true that a state has jurisdiction over the waters of the rivers which flow within its boundaries, and may, by its laws, regulate the title, enjoyment, and use of them awhile, and so long as they flow within its boundaries. But its authority stops here : the, right to the use of the same waters, when they flow beyond its boundaries, is not within its control. The title is not acquired under the laws of such state. If the waters flow to a mill in another state, and the use becomes annexed to it, the use and the title are exclusively to be governed by the laws of the latter state. What authority has Rhode Island to control the water which flows to a mill in Massachusetts ? The right to the use of such water, whether it be deemed real or personal estate, is a right exercised under the jurisdiction of Massachusetts, and is to be governed by its laws."

If the jurisdiction of a state cannot affect any water-power used in another state, even when one half the dam is in the former state and one half the water-flow within that state, it is evident that its jurisdiction can in no form extend to water-powers upon rivers that have flowed bodily beyond its boundaries. If the jurisdiction of a state cannot extend from one bank of a river to the opposite bank situated in a neighboring state, so as to tax or control any of the water-power of the river used on the opposite bank,

then it cannot extend from one end of a river to the other, so as to tax or control any portion of the water-power of the lower end, which is entirely outside the limits of the state. Whatever value, then, Lowell and Lawrence estates may have, this court has no jurisdiction over those estates, and no part of their values should be included or considered in any way in making a valuation of New Hampshire estates.

8. The report makes a purely artificial division of an estate, which can only have value as an entity places a valuation on each part separately, and adds the two for a total valuation.

The second item has no value except in connection with the first. There is no reason why a certain twelve per cent. of the water passing the dam at Lake Village should be worth ten times as much as the other eighty-eight per cent., and there is no reason for making such a division of the estate as is here made.

Flowage and reservoir rights are simple easements, and as such are not taxable, and the dam and gates do not in themselves constitute an estate of such value as is here placed upon it. As a matter of fact, the entire property has been appraised by these referees in both items. In the first item its value for all purposes of local use and enjoyment is given in full; and in the second item the value of the entire property as a means of enhancing the values of other estates is given in full,—and there is no reason why these should be added, and thus a double taxation put upon the estate.

Suppose a man to own ten acres of land in Gilford with a fine spring of water on it, and to pipe the water to a valuable hotel property of his own in Laconia. The Gilford selectmen say this land is worth $3,000 for all purposes of local use and enjoyment, and it is worth $3,500 as a water-supply to the Laconia hotel property, and hence we appraise it at $6,500. It is only placing two valuations upon the estate. By selling the estate and reserving the use of the spring, the second method of valuation is denied to the Gilford selectmen, and they must appraise it for its local value only; and it should be appraised for its local value only while the joint ownership of the estates remains. If a horse is worth $135 as a team horse, and $140 as a carriage horse, his total valuation is not $275, though he may be used for both purposes. If this Gilford estate is worth $135,000 for all purposes of local use and enjoyment, and $140,000 as a means of enhancing the value of other estates, it would seem to make but little difference in this particular case which method of valuation be adopted, though the second method is here claimed to be radically erroneous in principle. To adopt both methods and add the results obtained by each is nothing more nor less than a double taxation of the estate. The referees claim to have attempted an adjustment of valuations between this estate and the Lowell and Lawrence estates; but the latter being beyond the jurisdiction of this court, such an adjustment by this tribunal is impossible.

*Jewell & Stone, S. C. Clark, Albin & Martin,* and *M. W. Tappan, Attorney-General,* for the defendants.

CARPENTER, J.   Real estate must be taxed in the town where it is situated.   G. L., *c.* 53, *s.* 2; *c.* 54, *s.* 11.   "The words 'land,' 'lands,' or 'real estate' shall include lands, tenements, and hereditaments, and all rights thereto and interests therein."   G. L., *c.* 1, *s.* 20.   Easements are taxable : if appurtenant, they are in general taxed with and as a part of the land to which they belong. Easements in gross must necessarily be valued and taxed separately from the land out of which they are granted.

Water-power, or rights in a reservoir of water, are an interest in the land upon and by which they are created, and by the express terms of the statute must be taxed in the town where the land of which they are a part is situated.   Although they may be so far severed from that land and annexed to land situated in another town as to pass without special mention in a conveyance of the latter, their geographical location is not thereby changed.   The title to and occupancy of the land creating water-power or reservoir rights may be in one person, and of the power and rights in another.   In such case each must be separately assessed.   The plaintiffs own both the reservoir rights, and the dam, gates, land, and flowage out of which they issue.   Their water rights have not been severed from their lands in Gilford and annexed to their mills and other real estate situated elsewhere.   By a conveyance of the former they would pass, and by a conveyance of the latter they would not pass, without special mention.   If the reverse were true, they would be none the less real estate situated in Gilford.   They were properly valued and taxed with the lands in Gilford.   *Cocheco Co.* v. *Strafford,* 51 N. H. 455.

In the appraisal of a water-power, as of other property, all the facts and circumstances affecting its value are competent evidence.   The assessors may consider the original cost of the entire property, the quantity of land flowed and its value for other purposes, the magnitude of the power, its location and the place where it is or may be utilized, the uses to which it is or may be applied, together with the limitations, if any, either of the manner in which or of the purposes for which it may be employed, the income derived from it by way of rents or from its use by the owners, the expense of maintaining and managing it, the cost of equal power derived from other sources (that is, its comparative economy), the effect which the appropriation of the land for the purpose and the use of the power have to increase or to diminish the value of the owner's other lands, and their like effect upon the property of others,—in short, anything which might justly affect the judgment of a person desiring to purchase in determining what price he would offer.   *Cocheco Co.* v. *Strafford,* 51 N. H. 455, 476–478; *Low* v. *Railroad,* 63 N. H. 558, 562.   If a soap factory tends to depreciate

the value of adjacent lands, it may be less valuable than it would be if it enhanced their value.   A cotton factory, which increases the value of neighboring real estate, may be worth more than it would be if it had a contrary effect.   The entire value of a parcel of land may consist in its capacity to render other lands valuable, as if in a desert a single acre were found whereon artesian wells could be sunk producing sufficient water to irrigate and make fertile the whole desert.   The acre would be of great value because by means of it lands otherwise worthless could be made valuable. It could not be justly appraised without considering its effect upon them; but the increased value of the irrigated lands would not be the measure, or form any part of, its value.   A fair appraisal of the acre would not include any part of the increased value of other land; nor would an appraisal of the irrigated lands at their full value include any part of the acre's value.   It does not appear that any part of the enhanced value of the plaintiffs' mills and other estate situated elsewhere was comprised in the valuation of their reservoir rights.   The referees committed no error of law in considering that the value of the property is increased because it can be controlled and profitably used by the plaintiffs in Gilford for the benefit of their mills situated elsewhere, and because by its control and use in Gilford the value of their mills and other estate situated elsewhere is increased.   How much its value is augmented by these considerations is a question of fact, in the determination of which by the referees no error appears.

The additional facts which the plaintiffs desire to have reported are not material.   The authorities of Massachusetts cannot lawfully tax real estate situated in New Hampshire.   If they do tax it, such taxation is immaterial on the question whether it shall be taxed here.   The plaintiffs' reservoir rights are a part of their real estate in Gilford, from which, except by their destruction, they can never, in point of fact, be severed.   There may be for certain purposes a constructive severance; but it cannot change their actual location, or make them any the less a part of the land in Gilford.

It is immaterial where the property benefited by the use of the reservoir rights is situated.   The rights are not less a parcel of the Gilford lands, in case their exercise is beneficial to mills in Massachusetts, than they would be if they were used and controlled for the sole benefit of mills in Gilford.   It may be that the value of the mills in Massachusetts is increased by reason of the existence of the reservoir rights, and that of the rights by reason of the existence of the mills.   If so, and if each property is appraised for taxation at its full value, it does not follow that any portion of either property is included in the valuation of the other.   The assumption that the plaintiffs' reservoir rights are taxed with the Lowell and Lawrence mills to the extent that the value of the mills is increased by reason of the rights, has no foundation.   If by excavation on elevated land near a city pure spring-water were

found sufficient to supply, by means of an aqueduct, all the inhabitants, the effect might be not only to increase largely the value of the tract upon which the water is obtained, but also the value to some extent of every house and lot in the city. A taxation of the city lots and buildings at their full increased value, as the law requires them to be taxed (G. L., c. 56, s. 1), would not be a taxation of any part of the aqueduct company's rights or land; nor would a taxation of the latter at their full value be a taxation of the city property, although but for the city's proximity they might be substantially worthless.

The value of the plaintiffs' property is not affected by the fact that the benefited mills in Lowell and Lawrence are owned, not by the plaintiffs' corporation, but by the stockholders, who in place of money dividends take as their portion of the income the benefits accruing to their respective mills. The value of the aqueduct company's property would be neither more nor less if all the householders and lot-owners in the city were its stockholders, and instead of dividends in money received water each in proportion to the amount of his stock

If the plaintiffs should sell and convey all their property in Gilford, upon condition that the purchaser regulate the flow of water as it is now regulated, the right to the stipulated flow of water would be an interest in land situated in Gilford, and taxable. If the owner sells his dam and mill-privilege, reserving a right to draw a specified quantity of water, the reserved right is real estate, and taxable. If the owner of a mill and a reservoir water-right in Gilford, worth $21,000, sells all his real estate in Gilford for $10,000, its full value, reserving all water-rights except power sufficient for the use of the Gilford mill, his reserved rights are worth $11,000, and are taxable at that sum in Gilford. An owner of a valuable water-power cannot escape taxation by putting in another the title to the soil, which is generally of little comparative value in the absence of the power, and of no value for other purposes so long as it is used to create the power.

*Judgment on the report.*

BINGHAM, J., did not sit: the others concurred.