## SUSQUEHANNA POWER COMPANY *v.* STATE TAX COMMISSION OF MARYLAND.   (No. 1.)

No. 368.   Argued March 19, 20, 1931.—Decided April 13, 1931.

*Mr. Wm. Clarke Mason,* with whom *Messrs. Stevenson A. Williams, Frederick R. Williams,* and *A. Allen Woodruff* were on the brief, for appellant.

*Messrs. Wm. L. Marbury, Jr.,* Assistant Attorney General of Maryland, and *Robert H. Archer,* with whom *Mr.*

*Wm. P. Lane, Jr.*, Attorney General, was on the brief, for appellee.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on appeal, § 237 Jud. Code, as amended by the Act of January 31, 1928, from a judgment of the Court of Appeals of Maryland, 159 Md. 334; 151 Atl. 29, which upheld an order of appellee, the State Tax Commission, assessing 2110 acres of appellant's submerged lands, for 1929 taxation, at $2,349,300.

Appellant is a licensee of the Federal Power Commission, created under the Act of June 10, 1920, c. 285, 41 Stat. 1063. Acting under the license, it has constructed a dam across the Susquehanna River which, for present purposes, we assume to be navigable, and has established an adjacent power plant at a point within the State. As a part of the power project, it acquired by purchase from private owners, and by grant from the State, large areas of land, including the bed of the river and adjoining upland. On completion of the dam, the waters of the Susquehanna were backed up, forming a pool about fourteen miles in length, and submerging a large area formerly upland, including a town site, and land previously occupied and used as a canal. The lands assessed by appellee lie under the pool created by appellant's dam, and are used, and derive their chief value, as a part of the power project.

In the present suit, brought to review the order of the Commission fixing the assessment, appellant assailed its action, taken under Laws of Maryland, 1914, c. 841; Bagby, Ann. Code (1924), Art. 81, § 249 (2), directing assessment of property for taxation, as in conflict with the Federal Constitution. Appellant urges, as principal grounds for reversal, first, that in constructing and operating its power plant under the federal license, it, and its lands and property used in the power project, are agencies

or instrumentalities of the Federal Government, state taxation of which is impliedly prohibited by the Constitution, and, second, that in assessing the lands for taxation, appellee has assigned to them a value attributable to appellant's license, likewise immune from taxation, and to the river waters, not appellant's property, in violation of the due process clause of the Fourteenth Amendment.

1. The Federal Power Commission is authorized to grant to licensees permission to construct dams on navigable waterways, and to make use of surplus water not necessary for navigation. Act of June 10, 1920, *supra*. The Act contemplates the use of such surplus water in the development of power, and, for that purpose, the construction and operation of works and transmission lines. See *Ford & Son* v. *Little Falls Co.*, 280 U. S. 369. It provides (§ 14) that after the expiration of a license, the Government shall have the right to take over and operate the licensed project upon payment of just compensation as defined by the Act. The Commission is given extensive regulatory and supervisory powers over the construction, maintenance, operation, financing, rates, and service of licensed projects, and over the system of accounting maintained by licensees. The Act does not deal directly with state taxation, but § 8, forbidding voluntary transfers of licenses, provides that " tax sales shall not be deemed voluntary transfers . . ."

Appellant is a business corporation, operating its power plant for profit. The challenged tax is imposed, not on the license, but on the private property of the licensee used in its business. Lands privately owned are subject to state taxation although lying under navigable waters, *Central R. R. Co.* v. *Jersey City*, 209 U. S. 473; *Leary* v. *Jersey City*, 248 U. S. 328, as is private property in which the Federal Government may have an interest, *Baltimore Shipbuilding & Dry Dock Co.* v. *Baltimore*, 195 U. S. 375; *New Brunswick* v. *United States*, 276 U. S. 547; *Shaw* v.

*Oil Co.*, 276 U. S. 575, or which is subject to its control in the exercise of its power over navigable waters. *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150; *Keokuk & Hamilton Bridge Co.* v. *Illinois,* 175 U. S. 626. Hence, the present lands are subject to the taxing power of the State unless they are to be regarded as instrumentalities of the Federal Government because of their use as a part of the project which it has licensed.

Assuming, for present purposes, that the license of the Power Commission is a federal instrumentality, immune from taxation or other direct interference by the State, it does not follow that the property appellant uses in its power project is clothed with that immunity. The exemption of an instrumentality of one government from taxation by the other must be given such a practical construction as will not unduly impair the taxing power of the one or the appropriate exercise of its functions by the other. *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514, 523, 524.

With that end in view, the distinction has long been taken between a privilege or franchise granted by the Government to a private corporation in order to effect some governmental purpose, and the property employed by the grantee in the exercise of the privilege, but for private business advantage. The distinction was pointed out by Chief Justice Marshall in *McCulloch* v. *Maryland,* 4 Wheat. 316, 436, and in *Osborn* v. *The Bank,* 9 Wheat. 738, 867; see *Railroad Co.* v. *Peniston,* 18 Wall. 5, 34–37. It has been followed without departure, and property so owned and used has uniformly been held to be subject to state taxation. *Thomson* v. *Pacific Railroad,* 9 Wall. 579; *Central Pacific R. Co.* v. *California,* 162 U. S. 91; *Railroad Co.* v. *Peniston, supra; Baltimore Shipbuilding & Dry Dock Co.* v. *Baltimore, supra; Gromer* v. *Standard Dredging Co.,* 224 U. S. 362; *Ackerlind* v. *United States,* 240 U. S. 531; *Alward* v. *Johnson,* 282 U. S. 509; see *Choc-*

*taw, O. & G. R. R. Co.* v. *Mackey,* 256 U. S. 531; *Group No. 1 Oil Corp.* v. *Bass, ante,* p. 279.

The present case is not only controlled by the earlier decisions of this Court, but it would be difficult to suppose any case in which the adverse effect of a tax upon a governmental purpose would be more remote or attenuated, or in which the asserted immunity would more seriously impair.the sovereign power of the State to tax, than in this one.

Appellant is not aided by *Long* v. *Rockwood,* 277 U. S. 142, on which it chiefly relies. It was there held that royalties derived from a patent granted upon an invention by the Federal Government could not be taxed by a State. But there would be no warrant for extending such immunity to property of the patentee used to manufacture the patented article, and only a comparable extension would justify the immunity claimed here for appellant's lands because used as a part of its licensed power project.

2. No basis is laid in the present record for assailing the tax on constitutional grounds, either because the Commission has placed a higher value on appellant's lands than on others having a similar location and use, or because it has directly taxed appellant's license. The contention urged is that the lands are assessed at a higher value than they were before they were submerged, and higher than farm uplands in the neighborhood, and that since their use as a part of appellant's power project is rendered possible only by the federal license and by the water in the river, the assessment at the higher value, in effect, involves a forbidden tax on the license, and taxation of appellant for the value of the waters of a navigable stream.

Accepting, as we must on this record, the valuation of the Commission as neither excessive nor discriminatory, we can perceive no basis, either legal or economic, for relieving appellant from the burden of the tax by attempt-

ing the segregation of a part of that value and attributing it to independent legal interests, not subject to taxation, because those interests have a favorable influence on the value of the property.

An important element in the value of land is the use to which it may be put. That may vary with its location and its relationship to the property or legal interests of others. See *Manufacturing Co.* v. *Gilford,* 64 N. H. 337; 10 Atl. 849. Its proximity to means of transportation, highways, railroads or tidewater, see *New York, L. E. & W. R. Co.* v. *Yard,* 43 N. J. L. 632; *Trask* v. *Carragan,* 37 N. J. L. 264; cf. *Hersey* v. *Barron County,* 37 Wis. 75; or its location in the vicinity of water power belonging to another but available for use upon it, *State* v. *Flavell,* 24 N. J. L. 370, may increase its utility and hence its taxable value. A dock on New York harbor may have a greater value than one on non-navigable waters, cf. *Leary* v. *Jersey City, supra; Central R. R. Co.* v. *Jersey City, supra,* even though the advantages of the former may be terminated through the exercise of the superior power of the Federal Government over navigable waters, see *United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53.

A large part of the value of property in civilized communities has been built up by its inter-related uses; but it is a value ultimately reflected in earning capacity and the price at which the property may be sold, and hence is an element to which weight may appropriately be given in determining its taxable value. It has never been thought that the taxation of such property at its enhanced value is in effect taxation of its owner for the property of others. Nor can we say that the present tax, based upon what must be taken to be the fair value of appellant's lands profitably used in the business of developing and selling power, is forbidden because that use would not have been possible without the control which appellant has acquired over navigable waters through the grant of

its license. Those considerations which lead to the recognition of the power of a State to tax the property used by the grantee in the enjoyment of a federal license require recognition of the power to tax it on the basis of accepted standards of value, customarily applied in the taxation of other forms of property. See *Railroad Co.* v. *Peniston, supra.*

We have examined other objections to the tax, made in brief and argument; but we do not discuss them, as they are unsubstantial, and as the objections, on federal grounds, were not presented by the record or passed upon by the state court.

*Affirmed.*