**183 So. 347**

**STATE v. WM. J. OBERLE, Inc.**

**No. 34614.**

June 27, 1938.

Rehearing Denied Aug. 5, 1938.

Charles J. Rivet, of New Orleans, for appellant.

Jewell A. Sperling, of New Orleans, for appellee.

LAND, Justice.

The defendant, Wm. J. Oberle, Inc., is engaged in business in the City of New Orleans as a "Customhouse Broker".

The State is proceeding in this case by rule, under the "omnibus clause" of Section 17 of Act No. 15 of the Third Extra Session of 1934 of the State Legislature, the general occupational license tax statute, to compel defendant to pay an occupational license tax.

On the one hand, the State contends that defendant is engaged in a purely private business and is subject to the general occupation tax.

On the other hand, defendant asserts that he is a customhouse broker, duly licensed by the Secretary of the Treasury of the United States, and cannot be subjected to any occupational license tax whatever, as to do so would unconstitutionally burden "a purely Federal and quasi Federal function" (Transcript p. 3), and would interfere "with the commerce laws of the United States and particularly with the importation and exportation of commerce." (Transcript p. 4).

Judgment was rendered by the lower Court declaring Act 15 of the Third Extra Session of 1934, and its amendments, to be unconstitutional insofar as sought to be made applicable to customhouse brokers; and declaring that customhouse brokers are exempt from taxation under the license laws of the State, or any of its subdivisions. (Transcript p. 20).

From this judgment, the State has appealed.

(1) It is true that defendant is a customhouse broker, duly licensed by the Secretary of the Treasury of the United States under Section 641 of Article 1391 of the Tariff Act of 1930. (Transcript p. 3).

■ But we fail to find any provision in the Tariff Act of 1930 to the effect that customhouse brokers are agents of the National Government, discharging governmental functions.

To the contrary, the Treasury Department defines a customhouse broker as including "all persons, partnerships, corporations, and associations transacting customs business at a custom house in behalf of others generally". Art. 1392 of Tariff Act of 1930. (Transcript p. 7).

Customhouse brokers represent private persons. They receive no fees or emoluments from the United States Government, as testified by the President of defendant. (Transcript pp. 26, 27).

A customhouse broker's license only authorizes the holder to transact business in customs collection districts. They cannot represent a claimant before the Treasury Department, unless enrolled as attorney or agent in conformity with the requirements of the department (Department Circular No. 230, Treasury Department 42273). Arts. 1402 and 1403 of Tariff Act of 1930. (Transcript 13, 14). This is very far from being an agent of the United States, or being engaged in a governmental function. They are no more discharging governmental functions than are the lawyers licensed to represent their clients before the Treasury Department. (Art. 1403, Transcript 14). At the most, customhouse brokers are independent contractors, pursuing a private business for profit, and the fact that their occupation is regulated by law does not make those engaged therein government officials, or result in immunity from taxation.

In Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17, 54 S.Ct. 267, 269, 78 L.Ed. 622, the Supreme Court of the United States said:

· "Appellant's license under the United States Warehouse Act did not confer upon it immunity from state taxation, for neither the appellant nor its business was, by force of the license, converted into an agency or instrumentality of the federal government. The Warehouse Act [7 U.S.C.A. § 241 et seq.] confers upon licensees certain privileges and secures to the national government, by means of the licensing provisions, a measure of control over those engaged in the business of storing agricultural products who find it advantageous to apply for the license. The government exercises that control in the furtherance of a governmental purpose to secure fair and uniform business practices. But the appellant, in the enjoyment of the privilege, is engaged in its own behalf, not the government's, in the conduct of a private business for profit. It can no longer be thought that the enjoyment of a privilege conferred by either the national or a state government upon the individual, even though to promote some governmental policy, relieves him from the taxation by the other of his property or business used or carried on in the enjoyment of the privilege or of the profits derived from it. Susquehanna Power Company v. State Tax Commission, 283 U.S. 291, 51 S.Ct. 434, 75 L.Ed. 1042; Fox Film Corporation v. Doyal, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010; Broad River Power Company v. Query, 288 U.S. 178, 180, 53 S.Ct. 326, 77 L.Ed. 685."

*    *    *    *    *    *

"The mere extension of control over a business by the national government does not withdraw it from a local tax which presents no obstacle to the execution of the national policy. Compare Susquehanna Power Co. v. State Tax Commission, supra; Broad River Power Company v. Query, supra. See Willcuts v. Bunn, 282 U.S. 216, 226, 230, 51 S.Ct. 125, 75 L.Ed. 304 [71 A.L.R. 1260]."

It is clear from the above decision that the mere extension of control over the business of customhouse broker by the national government does not withdraw it from a local tax, as defendant, in the enjoyment of the privilege under its license, is engaged in its own behalf, and not in behalf of the government, in the conduct of a private business for profit.

As the local tax claimed by the State in this case does not impose a burden upon a federal function, it presents no obstacle to the national policy in the control and administration by the government of its customs. Obviously, the only concern of the government is to see that the proper duties are collected, and the licensing of competent customhouse brokers is merely in promotion of the governmental policy. But neither the defendant, nor its business of customhouse broker, was, by the force of the license, converted into an agency or instrumentality of the federal government.

█ (2) We fail to see wherein the occupational license tax to which the State seeks to subject defendant, as a customhouse broker, would interfere "with the commerce laws of the United States and particularly the importation and exportation of commerce", as contended by defendant. The evidence fails to show that

defendant is engaged in either. Defendant receives its business from importers of merchandise, private persons. (Transcript pp. 26, 27). Defendant is not itself an importer of merchandise. If it were, it would not be licensed as a customhouse broker.

Article 1398 of Tariff Act of 1930 (Transcript p. 10) declares that:

"(a) Individuals, partnerships, corporations, or associations transacting business at a customhouse relating solely to their own importations and exportations are not required to be licensed, nor are their officers, employees, agents, or attorneys acting for them, unless such officers, employees, agents, or attorneys transact customs business in behalf of other persons generally."

The State in this case is not demanding that defendant pay an occupational license tax as an importer, but only on its receipts, as customhouse broker, from importers of merchandise, private persons, a purely local business.

No issue is raised on the question of the quantum of the tax, if any be due.

In our opinion, Act 15 of the Third Extra Session of the State Legislature of 1934, as amended, is constitutional.

The judgment appealed from by the State of Louisiana is annulled and reversed.

It is now ordered that there be judgment in favor of the State of Louisiana condemning defendant, Wm. J. Oberle, Inc., customhouse broker, to pay the sum of

$120 as occupational license tax for the year 1936, with interest thereon at the rate of 2% per month from March 1, 1936 until paid, plus 10% attorney's fees on said tax and interest, and all costs, and further enjoining defendant, Wm. J. Oberle, Inc., from the further pursuit of its business until payment of said judgment.