SEAWELL, J., took no part in the consideration or decision of this case.
BARNHILL, J., dissenting.
SCHENCK, J., concurs in the dissenting opinion.
This is a civil action to recover alleged contributions due the unemployment compensation fund upon the commissions paid by defendant to its soliciting agents and its managers in their capacity as soliciting agents. Upon specific waiver of a jury, the judge found the facts.
To the following findings of fact there were no objections or exceptions: That defendant is a member of the Federal Home Loan Bank of Winston-Salem but has never availed itself of this source of credit, nor has it ever discharged any functions or duties of the bank or of the Government by reason of its membership in said bank; that the typical agent and the typical manager (in his capacity as soliciting agent) of defendant are under written contracts to defendant, are required to give bonds satisfactory to defendant, are subject to direction as to territory and as to duties, are required to perform such further duties as may be assigned by the defendant, are required to devote their full time, talents and energies to defendant's business, and are prohibited from soliciting insurance for any other company without defendant's written permission. From ample evidence, but over defendant's objection, the judge found: *Page 481 
That the soliciting agents and managers (in their capacities as soliciting agents) are required to deliver policies in accordance with defendant's instructions in its manuals furnished to them by defendant; that defendant furnishes such agents and managers account books, vouchers, and other books and papers necessary for their work and all such books, papers, etc., remain the property of defendant, subject to its inspection at any time and subject to be returned upon termination of the contract; that the soliciting agents and managers (in their capacities as agents) are governed strictly by instructions given them by defendant at the time of the making of the contract and thereafter, and are at all times held to strict compliance with the conditions of the contracts, which may be terminated by either party on ten days written notice; that defendant's agents are under the supervision and control of defendant's managers; that defendant furnishes desk space to its soliciting agents in all its offices and the agents and managers (as agents) use this space in performing part of their duties for defendant; that defendant advances money to its agents and district managers to aid them in conducting their business of soliciting for defendant; that education and recreational meetings for the agents are held by defendant and their expenses, generally, at such meetings are paid by defendant; "that the services performed by the soliciting agents and managers in their capacity as soliciting agents is a necessary and integral part of the business in which the defendant is engaged and for which it was originally chartered; and further that said agents are not customarily engaged in an independently established trade, occupation, profession or business."
Based upon the above, and other, findings of fact, the trial judge concluded, as a matter of law that the defendant was not, by reason of its membership in the Federal Loan Bank of Winston-Salem, an instrumentality of the United States such as is exempt from the provisions of the Unemployment Compensation Law; and, further, that the employment of the soliciting agents and the district managers (as soliciting agents), and the remuneration paid them, is such as to bring them under the provisions of the Unemployment Compensation Law and thus require defendant to make proper contribution for such purpose. From a judgment to this effect, defendant appealed, assigning as its principal errors the two conclusions of law indicated above.
Two questions are decisive of this appeal: (1) Is the membership of a North Carolina insurance corporation in the Federal *Page 482 
Home Loan Bank of Winston-Salem sufficient to constitute the corporation such an instrumentality of the United States as to exempt it from the provisions of the N.C. Unemployment Compensation Law? We think not. (2) Does the relationship between defendant and its soliciting agents and managers (in their capacity as soliciting agents) constitute "employment," and the compensation paid them constitute "wages" and "remuneration," as those terms are defined and used in the N.C. Compensation Law? We think so.
(1) Home Loan Bank Member as Federal Instrumentality. In CapitolBuilding Loan Assn. et al. v. Kansas Commission of Labor and Industry, 148 Kansas, 446, 83 P.2d 106, recently decided, a building and loan association sought exemption from a state unemployment compensation act by reason of its membership in a Federal Home Loan Bank. In a clear and logical opinion speaking to the subject, it is stated: "Tested by all the light the diligence of counsel for the litigants has supplied us, as well as by our own researches, we do not regard the plaintiffs' mere stockholder membership in the Federal Home Loan Bank of Topeka, with the privileges and duties attendant on that relationship, as sufficient to constitute them Federal instrumentalities, nor to relieve them from making contributions to the unemployment compensation fund created by the statute of 1937."
Although we recognize that, as stated in Metcalf Eddy v. Mitchell,269 U.S. 514, 522, 70 L.Ed., 384, "Just what instrumentalities of either a state of the Federal Government are exempt from taxation by the other cannot be stated in terms of universal application," we think that the conclusion in the Capitol Building Loan Assn. case, supra, indicates the sound view in the instant case. We agree with the view indicated in ClallamCounty v. United States, 263 U.S. 341, 68 L.Ed., 328, that there is a very real distinction between the creation of an agency primarily and fundamentally to discharge a function of the Federal Government and the grant of incidental powers, functions or duties of the Federal Government to a private enterprise existing primarily for profit. See the opinion byJustice Holmes, Clallam County v. United States, 263 U.S. 341 (344). A similar distinction was recognized in Federal Land Bank v. Priddy,295 U.S. 229 (233-4), where it was pointed out that, although Federal Land Banks are "Instrumentalities of the Federal Government," "joint stock land banks are privately owned corporations for profit to their stockholders through the business of making loans on farm mortgages" and "there is nothing in their organization and powers to suggest that they are governmental instrumentalities." Again, in FederalCompress Warehouse Co. v. McLean, 291 U.S. 17, 78 L.Ed., 622, a private warehouse business sought to escape state taxation on the ground that it had been *Page 483 
licensed for the storage of agricultural products by the Federal Government; in answer to this the Court said, "It can no longer be thought that the enjoyment of a privilege conferred by either the national or a state government upon the individual, even though to promote some governmental policy, relieves him from the taxation by the other of his property or his business used or carried on in the enjoyment of the privilege or of the profits derived from it. Susquehanna Power Co. v. TaxCommission, 283 U.S. 291, 75 L.Ed., 1042; Fox Film Corp. v. Doyal,286 U.S. 123, 76 L.Ed., 1010; Broad River Power Co. v. Query,288 U.S. 178, 77 L.Ed., 685." It thus appears that the meaning of the term "Federal instrumentality" has consistently been treated as having a more precise meaning than that assigned it by defendants here, and that the term is not properly applicable to a private corporation, existing primarily for profit but granted certain incidental duties or privileges by the Federal Government. This doctrine of immunity, protecting instrumentalities of either the State or the Federal Government from interference at the hands of the other, developed by Marshall (McCulloch v. Maryland, 4 Wheaton, 316, 432, 436) to aid the perpetuation of the dual sovereignty established by our Constitution, is not undergoing a process of expansion. Rather, the more recent cases indicate a tendency to restrict more sharply than ever the various exemptions which arise out of the doctrine. See Clallam Countyv. United States, supra; Helvering v. Gerhardt, 304 U.S. 405,82 L.Ed., 1427. In view of the restricted meaning which has always been given the term "Federal instrumentality," it seems doubtful whether at any time in the history of our highest Court a private insurance corporation owning stock in a Federal Home Loan Bank would have been considered a "Federal instrumentality"; certainly the possibility of such a determination today, in the light of recent cases touching upon the subject, is extremely remote. See Helvering v. Gerhardt, supra; Clallam County v. United States,supra; Rogers v. Graves, 299 U.S. 401. We are constrained to hold that, in this record, the defendant insurance corporation is not such a Federal instrumentality as would exempt it from the unemployment contributions here sought.
(2) "Employment" of Agents and Managers for "Remuneration." An examination of the pertinent definitions in the Unemployment Compensation Act makes it readily apparent that such words as "employment," "employer," "employing unit," "wages," and "remuneration," when used in the act, are not used as words of art having rigid, precise and restricted meanings, but rather, as defined by the act itself, are used as broad terms of description, evidencing a legislative intent to give to the act a broad and liberal coverage to the end that the far-reaching effects of unemployment may be alleviated. For example, "`Employing *Page 484 
unit' means any individual or type of organization, including any partnership, association, trust, estate, joint stock company, insurancecompany, or corporation, whether domestic or foreign." (Section 19e); "`Employer' means (1) any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment, eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week;" (Section 19f.1); "`Employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied" (Section 19g.1); "`Wages' means all remuneration payable by employers for employment" (Section 19m);"`Remuneration' means all compensation payable for personal servicesincluding commissions and bonuses and the cash value of all compensationpayable in, any medium other than cash." (Section 19n.) Insurance companies such as defendant are expressly included under the term "employing unit." Since it is an employing unit having more than eight soliciting agents and district managers, defendant is an "employer" under Section 19f.1, if the relation of these agents and managers to the defendant constitute "employment." Soliciting agents and district managers (as soliciting agents), each under individual contract with defendant, to solicit and write insurance and perform other services for defendant, perform such services in return for commissions. Accordingly, if commissions constitute "remuneration," as defined by Section 19n, the relationship of the soliciting agents and managers (as soliciting agents) to defendant is "employment" within the definitions of the Unemployment Compensation Act. Since "remuneration" includes "all compensation payable for personal services including commissions and bonuses" (Section 19n), the relationship of the soliciting agents and the district managers (as soliciting agents), by the definitions of the Unemployment Compensation Act, is clearly brought within the terms "employment." Accordingly, defendant is an "employing unit" as to these agents and managers and is their "employer" and, within the terms of this act, such agents and managers are within the "employment" of defendant.
This conclusion is further reinforced by the act. Section 19 (6), A, B, and C, provides that where "services" (in the present case, soliciting insurance) are performed for "remuneration" (in this case, commissions), such services are "Deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that: (A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) such service is either outside the *Page 485 
usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business." The burden of showing these matters of exemption is placed by the statute on the defendant, and, since they are stated conjunctively and not disjunctively, all three of these elements must be shown in order that exemption from the act be secured. Without entering here upon an elaborate analysis of the application of this rule to the instant case, it is significant (a) that the soliciting agents and managers (as soliciting agents) were subject to a high degree of control by the defendant by reason of their written contracts, (b) that their services were rendered in the manner usual and customary for such services were generally performed in the offices of defendant, and (c) that such services were directly related to, and contributed to, the primary purpose for which defendant was organized. Further, the Commission decided that the exemption did not exist here, and the extent to which this Court may review the determinations of the Commission is, at least, open to doubt. SeeUnemployment Compensation Commission v. Kirby, 212 N.C. 763.
In passing upon a similar Unemployment Compensation Act as it applied to soliciting and district agents of an insurance company, the Colorado Supreme Court, since the argument of this cause, filed an opinion on 14 February, 1939, in accord with the view here expressed to the effect that the agents of the company are covered by the act. It is there said(Industrial Commission of the State of Colorado v. Northwestern Mutual LifeInsurance Company), "Even if the test of coverage in this case is a technical relationship of master and servant, notwithstanding the legislative tests of `employment' . . . of the statute, the company's agents are servants within the relationship and not independent contractors. Since it is our opinion that the activities of the company's agents are within the legislative definition of `employment,' . . . it is unnecessary for us to make a determination of the master and servant issue." The Connecticut Supreme Court, at the December Term, 1938, inNorthwestern Mutual Life Insurance Company v. Joseph M. Tone et al., reached a contrary decision (Maltbie, C. J., writing the opinion), but the act there construed places a greater emphasis than does ours upon the common law concepts involved of master and servant, principal and agent.
Likewise, the case of The Texas Company v. Leon L. Wheeless et al., decided recently (but not yet reported) by the Supreme Court of Mississippi, is clearly distinguishable from the instant case; there the status of retail oil and gas distributors under independent contracts was *Page 486 
involved, a status much more clearly that of independent contractor than is the case with the insurance agents here discussed.
It is not surprising that a wide disparity of views is appearing, since not only are the different cases raising the question argued upon a number of different theories, but there are numerous variations apparent in the respective state unemployment compensation acts. Such variations in the state laws and the interpretations given them are but reflections of the considerable latitude necessarily allowed the individual states to the end that they may work out compensation acts suited to their own peculiar needs. In the words of the late Justice Cardozo, speaking to this point inSteward Machine Company v. Davis, 301 U.S. 548 (593-4), 81 L.Ed., 1279: "A wide range of judgment is given to the several states as to the particular type of statute to be spread upon their books. . . . What they may not do, if they would earn the credits, is to depart from those standards which in the judgment of Congress are to be ranked as fundamental. Even if opinion may differ as to the fundamental quality of one or more of the conditions, the definer will not avail to vitiate the statute." Accordingly, it would appear settled that the matter here involved is one of state law, to be interpreted finally by this Court.
The scope and purpose of the present act are exceptional in breadth. The draftsmanship of the definition section, which gives flesh and sinew to the whole, shows a carefully considered and deliberate purpose to leap many legal barriers which would halt less ambitious enactments. As far as language will permit it, the act evinces a studied effort to sweep beyond and to include, by redefinition, many individuals who would have been otherwise excluded from the benefits of the act by the former concepts of master and servant and principal and agent as recognized at common law. In the words of the late Justice Holmes, in Johnson v. U.S., 163 Fed., 30 (32), (C.C.A., 1st): "The legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premises of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for the courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." This is quoted with approval in Keifer and Keifer v. Reconstruction FinanceCorporation et al., decided by the United States Supreme Court, 27 February, 1939. It is our task to interpret the law, as it is written, fairly and accurately. "Whether wisdom or unwisdom resides in the scheme . . . it is not for us to say." Helvering v. Davis, 301 U.S. 619 (644),81 L.Ed., 1307. *Page 487 
"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. . . . The courts have no function of legislation and simply seek to ascertain the will of the legislature." United States v. Goldenburg, 168 U.S. 95,102-3, 42 L.Ed., 394. The General Assembly, in the instant act, in order to discharge more precisely its legislative function, assumed the role of definer. This is not unusual. Fox v. Standard Oil Co., 294 U.S. 87;Steinberg v. U.S., 14 F.2d 564; Spano v. Fruit Growers, Inc.,83 F.2d 150; also see Supply Co. v. Maxwell, 212 N.C. 624, 626, where it was said: "The act contains its own glossary or definition of terms." The clear and unequivocal meanings of those definitions are strongly indicative of the legislative intent as to the detailed applications of the act, and in them the legislative intent to disregard a number of the near categories of the common law is apparent. "The heart of a statute is the intention of the law-making body. Trust Co. v. Hood, Comr., 206 N.C. 268,173 S.E. 601." Supply Co. v. Maxwell, supra (627); Belk Bros. v. Maxwell,ante, 10.
The power of the General Assembly to broaden or restrict common law concepts is widely recognized (N. Y. Central Railroad v. White,243 U.S. 300, 61 L.Ed., 667; McDermott v. State of Washington, 82 P. 2nd, 568) and is not here challenged. Although the extent of the area encompassed by some of the definitions may cause surprise, the duty of this Court is to expound and to interpret the law as it is given to us, not to redraft it along lines which may seem to us more conservative and more desirable. The economic and social evil of unemployment in its broad sweep frequently disregards man-made geographic and political boundaries; perhaps, it follows that former boundaries must be surrendered in seeking a remedy for such an evil. If new social evils produce, as counter-forces, new ideas of control of these evils, and such ideas are brought to us from the legislative forum, we must guard against falling victims to that suspicion which is born of the mere novelty of things.
Upon a careful examination of the record in this case and the act itself, giving due consideration to the meanings assigned by the General Assembly to the "key words" of the act, we are constrained to hold that defendant's soliciting agents and district managers (in their capacities as soliciting agents) are in the "employment" of defendant, as the same is used in the N.C. Unemployment Compensation Act. Accordingly, defendant is liable for the contributions here sought.
The judgment of the court below is
Affirmed.
SEAWELL, J., took no part in the consideration or decision of this case. *Page 488