Argued May 22; reversed June 25; rehearing granted December 3, 1940; argued on rehearing June 10; former opinion adhered to September 9, 1941

# SINGER SEWING MACHINE CO. *v.* STATE UNEMPLOYMENT COMPENSATION COMMISSION ET AL.

(103 P. (2d) 708, 116 P. (2d) 744)

In Banc.

*Ralph H. Campbell,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for appellant.

*Walter L. Tooze,* of Portland, for respondent.

*Green, Boesen & Landye,* of Portland, for Oregon State Federation of Labor, amicus curiae.

*Carey, Hart, Spencer & McCulloch,* of Portland, for Northwestern Mutual Life Insurance Co., amicus curiae.

On or about the 6th day of January, 1938, John B. Stradford filed a claim dated January 3, 1938, for benefits at the employment office maintained by the

State Unemployment Compensation Commission at Oregon City, Oregon, and thereafter continued his claim for benefits. This claim was asserted by Stradford by virtue of the provisions of the Unemployment Compensation Law, chapter 70, Oregon Laws 1935, Special Session, as amended by chapter 398, Oregon Laws 1937. The claim is based upon his alleged employment by the Singer Sewing Machine Company, plaintiff herein, for the last five completed calendar quarters prior to the said date upon which his claim was filed as above stated, it being alleged in said claim, dated and filed aforesaid, that he the said Stradford was totally unemployed; that his unemployment was not due to a labor dispute in which he participated or which he assisted in financing, or in which he assisted; that said claimant, Stradford, was able to work and available for work and had registered for work at Employment Office No. 18.

A claim determination was made by a claim deputy pursuant to the provisions of said Unemployment Compensation Law, finding that said claimant, Stradford, was eligible to receive benefits under the provisions of said Unemployment Compensation Law; that his weekly benefit was $15 and that the maximum amount of benefits within his benefit year was $233.92.

Following the receipt of a copy of the claim determination, the plaintiff, Singer Sewing Machine Company, submitted information to the commission and its Claim Division and the claim was redetermined and benefits denied.

The claimant then appealed for a hearing pursuant to the provisions of Section 9, (b), of the Unemployment Compensation Law; and, after due notice to the interested parties, such hearing was conducted and a

decision rendered by the commission referee affirming the redetermination on the claim as made by the claim deputy.

The claimant then filed an application for review by the commission in conformity with the provisions of section 10 of the law. Upon the review of said claim, after consideration of the testimony, the commission entered its findings of fact, conclusions of law, and decision reversing the decision of the referee and allowing benefits to the claimant Stradford in conformity with the first determination on the claim.

In conformity with the provisions of section 11 of said law, in order to secure judicial review of said last mentioned decision, the Singer Sewing Machine Company instituted this proceeding by filing its complaint as plaintiff, against said commission and said Stradford as defendants in the circuit court of Clackamas county. Issues were joined by said commission filing an answer to said complaint. After presentation of said cause, the circuit court of Clackamas county handed down an opinion, entered its findings of fact and conclusions of law and rendered a judgment reversing and setting aside the decision of the commission and ordering said commission to make and enter of record herein an order finally denying benefits to claimant, John B. Stradford, for and on account of his claim herein. From this judgment of the circuit court the State Unemployment Compensation Commission prosecuted this appeal.

KELLY, J. The controlling question herein is whether the services of claimant, Stradford, for plaintiff should be deemed to be employment subject to the terms of the Unemployment Compensation Law as

amended by Oregon Laws 1937, chapter 398, p. 581, et seq., and further amended by Oregon Laws 1939, chapter 515, p. 1062, et seq.

The record discloses that on the 19th day of November, 1936, a contract in printed form was executed by plaintiff and claimant, which contract is known to this record as respondent's exhibit A. It is also shown that services were required of claimant by plaintiff not mentioned in such contract.

The Unemployment Compensation Law, as amended, among other things, provides that—

" 'Employment' means service for an employer, including service in interstate commerce within the United States, performed for remuneration or under any contract of hire, written or oral, express or implied." Subdiv. (f), Sec. 1, Chap. 515, Oregon Laws 1939, at p. 1065.

Subdivision (E), subsecs. (1) and (2) of the Unemployment Compensation Law, as amended, provides that—

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(2) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service."

The subdivision of the printed contract executed by plaintiff and defendant, which is designated therein as Fifth, D., contains the following provision:

"The Second Party (claimant) agrees:

\*　\*　\*　\*　\*

D. To account at the request of the Company for all merchandise owned by the Company and consigned or entrusted to the Second Party; to ascertain at the request of the Company the location of any merchandise sold or leased hereunder for which full payment shall not have been received by the Company and to inform the Company of such location; to ascertain at the request of the Company the address of any purchaser or lessee obligated for payments on accounts entrusted to the Second Party for collection, and to inform the Company of such address and to do any act or thing that the *Company may consider necessary or advisable for the protection of its interests* and enforcement of its rights under any sale or lease effected by the Second Party or with respect to an account entrusted to the Second Party for collection." (Italics supplied.)

In explanation of exhibit 1, the claimant testified as follows:

"This time of the year on August 13, 1937, just prior to that time, the Singer Sewing Machine Company inaugurated the advertising campaign that we mail advertising matter on various routes wherever the men were employed in selling their products. These were sent apparently on April 13th. I have this letter on that date, stating that their bulletins were mailed today, so this was an advertising plan to sell machines to the country, paid for by the Singer Sewing Machine Company with all postage paid and sent out to help the men in the territory to produce sales. You will note in this letter it says, 'Report all sales and repairs and prospects to be obtained. Send this to me as soon as the route has been gone over.' Well, it so happened I did not cover this entire route which was forty or fifty miles. I hadn't quite finished the route when I quit working for the Singer Sewing Machine Company."

Exhibit No. 1, to which the foregoing testimony refers, is written upon the printed stationery of the Singer

Sewing Machine Company, dated 8-13-1937, and the pertinent part thereof is as follows:

"Mr. Stradford:

Roto Bulletins mailed today. They will be distributed by mail carrier Saturday morning.

Plan to start working the route Tuesday morning, Aug. 17 1937. Please make a report of all sales and repairs & prospects obtained, send this to me as soon as you have finished the route.

Paul L. Dies."

There is no requirement in the printed contract, respondent's exhibit A, that claimant should distribute advertising material or make a report upon the results obtained by such a course.

In the face of the foregoing excerpts of the record herein, we think that the plaintiff has not shown that claimant has been "free from control or direction" over the performance of his services either under the contract or in fact.

The record discloses that claimant had no place of business, that such work of repairing, as he performed, was done at his residence. There is no showing that claimant was customarily engaged in an independently established business of the same nature as that involved in the contract of service.

The Unemployment Compensation Law, as amended, defines "employe" as follows:

" 'Employe' means any person, including aliens and minors, employed for remuneration or under any contract of hire, written or oral, express or implied, by an employer subject to this act in an employment subject to this act." Sec. 1, subdiv. (c) Chap. 515, Oregon Laws 1939, p. 1063.

■ We are of the opinion that the foregoing statutory definitions are controlling, although they differ from

the meaning formerly attributed to the terms so defined: 25 R. C. L. 1049.

*In re Monrovia Evening Post*, 199 Cal. 263, 248 P. 1017; *De Witt v. State*, 108 Ohio St. 513, 141 N. E. 551; *O'Boyle & Parker-Young Co.*, 95 Vt. 58, 112 A. 385; *Fisk v. Bonner Tie Co.*, 40 Idaho 304, 232 P. 569; *Chicago & E. R. Co. v. Kaufman*, 78 Ind. App. 474, 133 N. E. 399; *McDowell v. Duer*, 78 Ind. App. 440, 133 N. E. 839; *Industrial Commission v. Continental Inv. Co.*, 78 Colo. 399, 242 P. 49; *Fox v. Standard Oil Co. of N. J.*, 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780.

■ The authorities are not harmonious upon the question whether such services as those performed by claimant herein come within the statutory definition of employment, but we think that the weight of authority and those cases, which employ the better reasoning, support the commission's contention that the performance of such services brings claimant's case within the purview of the Unemployment Compensation Law. The following cases announce the rule here upheld: *Industrial Commission v. Northwestern Mut. Life Ins. Co.*, 103 Colo. 550, 88 P. (2d) 560; *Globe Grain and Milling Co. v. Ind. Com.*, 98 Utah 36, 91 P. (2d) 512; *In re Mid America Co., In re National Union Loan Soc., Inc., In re National Union Thrift Soc., Inc.*, 31 Fed. Supp. 601; *McDermott v. State of Washington*, 196 Wash. 261, 82 P. (2d) 568; *Unemployment Comp. Com'n v. Jefferson S. L. Ins. Co.*, 215 N. C. 479, 2 S. E. (2d) 584.

The contrary has been held in *Washington Recorder Pub. Co. v. Ernst*, 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667, and in *Wisconsin Bridge & Iron Co. v. Ramsay*, 233 Wis. 467, 290 N. W. 199. Each of these cases has a dissenting opinion which supports the rule we announce herein.

The case of *Texas Co. v. Wheeless*, 185 Miss. 799, 187 S. 880, cited by plaintiff, holds that where contracts between an oil company and consignees for distribution of petroleum products did not create master-servant relation and many consignees were firms or corporations and most of them were engaged in other businesses; the arrangement was not a contract of hire within the statutory definition of "employment" and the oil company was not required to contribute to the unemployment compensation fund. There, the supreme court of Mississippi hold that the correct test, as to who is a servant, is whether the service is rendered by one whose physical conduct, time and activities in the performance of his duties are controlled, or are subject to the right of control by the alleged master under the contract of employment or hire. The record of the Wheeless case is therein distinguished from that of *Texas Co. v. Mills*, 171 Miss. 231, 156 So. 866, 869. In the Mills case the decision was predicated upon the fact that the duties of the distributor in that contract were expressly fixed by "the rules and practices of the company and by instructions issued * * * from time to time", the distributor being required by the contract itself to "strictly observe and obey the company's instructions" in the performance of his duties. The court in the Mills case applied the test whether the alleged servant's physical conduct in the performance of the services in the affairs of his employer is controlled, or is subject to the right of control, by the alleged master, and held that the foregoing quoted provisions of the contract subjected him to the appellants' control with respect to his physical conduct in the performance of his duties, citing *Singer Mfg. Co. v. Rahn*, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440.

In *Texas Co. v. Wheeless*, supra, the court also referred to the case of *Texas Co. v. Jackson*, 174 Miss. 737, 165 So. 546, and said that there the Mississippi court had again construed the provisions of a contract similar to those construed in the Mills case giving the same effect as given in the Mills case. Those provisions were not in the contract involved in the Wheeless case. Neither were the quoted provisions of the contract in the instant case involved in the Wheeless case.

In *Northwestern Mutual Life Ins. Co. v. Tone*, 125 Conn. 183, 4 A. (2d) 640, 121 A. L. R. 993, also cited by plaintiff, a distinction is noted between the contract involved in that case and the contract involved in *Hall v. Sera*, 112 Conn. 291, 152 A. 148. In *Hall v. Sera*, supra, the agent devoted all his time to the work entrusted to him; each week he was given a list of collections to be made, and it was his duty to make those collections and turn the proceeds into the company at a definite time. There was no such provision in the contract involved in the Tone case. While the contract involved in the instant case does not contain a specific provision that the claimant should devote all of his time to the work entrusted to him, it does have a provision very similar to that which is above quoted from the contract under consideration in *Hall v. Sera*, supra, with reference to making collections and turning the proceeds into the company at a definite time.

Moreover, there is a distinction between the definition of the term, "employment", in the Connecticut statute and the definition of that term in the Oregon statute. The Connecticut act defines "employment" as used in it to mean, so far as the issues germane to

the issues before us, "any service including service in interstate commerce, performed under any express or implied contract of hire *creating the relationship of master and servant*". General Statutes, Supp. 1937, Chap. 280a, Sec. 803d. (Italics supplied.)

Under the definition set forth in the Oregon statute, "employment" means service for an employer, including service in interstate commerce within the United States, performed for remuneration or under any contract of hire written or oral, express or implied. Oregon Laws 1939, Chap 515, Sec. 1, (f). It will be noted that the italicized clause, "creating the relationship of master and servant", which appears in the Connecticut statute is omitted from the Oregon statute.

██ We are not impressed with the argument that the title of the Unemployment Compensation Act is so restrictive that its provisions could not be made to apply to any case where an unemployed independent contractor is seeking to enforce a claim thereunder, for the reason that the title of the act refers only to unemployment and contains no reference to anyone occupying the status of independent contractor. Following the argument to its logical conclusion, the act cannot be made to apply even to a case where the relationship is admittedly that of a master and servant, for the reason that the title of the act contains no reference to one sustaining the relationship of servant or employe to a master or employer. In saying that, we do not mean to recede from our holding herein that the relationship defined in the act in question must be shown in order to justify the allowance of a claim for compensation thereunder. We think such a relationship appears in this case.

. The judgment of the circuit court is reversed and the decision of the commission allowing benefits to the claimant is reinstated.

RAND, C. J., and BELT, J., dissent.

BEAN and BAILEY, JJ., not sitting.

---

BELT, J. (dissenting). In my opinion, Stradford, under the undisputed facts, was an independent contractor. The Unemployment Compensation Act of this state was not intended by the legislature to afford protection to a person having such status. Stradford was not an "employee" within the meaning of the act.

The following opinion of the trial judge substantially expresses my views:

"This is a proceeding brought by plaintiff to review the decision of the defendant State Unemployment Compensation Commission, which held that one John Stradford was entitled to certain benefits under the unemployment compensation law of Oregon by virtue of his being in the employ of plaintiff Singer Sewing Machine Company, Inc.

"Under Chapter 70, Laws of Oregon, Special Session 1935, as amended, the decision of the Unemployment Compensation Commission is final and conclusive if the same is supported by the evidence, the jurisdiction of this court being confined to questions of law only. Obviously, if the findings of the Commission are based upon an erroneous application of the law, the jurisdiction of the court would then attach with full power and authority to reverse the decision of the Commission.

"To determine whether or not defendant John B. Stradford, under the evidence adduced before the Commission and now before the court, was an employee

of plaintiff Singer Sewing Machine Company, Inc., we must apply the following provisions of the law to the admitted facts, which are determinative of the question:

'Section 2: (f) (E): Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

'(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

'(2) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service.'

"The record discloses the following facts:

"Plaintiff Sewing Machine Company and defendant John B. Stradford entered into a written contract wherein and whereby said Stradford was authorized to sell sewing machines and other merchandise upon a commission basis. Stradford had his own business headquarters at his residence and paid all of his own expenses. He solicited his own business according to his own methods; he made his own appointments for demonstrations, and came and went as he pleased. He had no fixed hours nor days for work except at his own convenience. He furnished a bond, paying the premium therefor, which secured payment to the Sewing Machine Company of all funds of said company coming into his hands. He did independent repair work on sewing machines in connection with his sales activities, charging his own prices for labor performed and material used. He carried a line of accessories, such as oils and needles, for which he paid the wholesale price, selling the same at retail prices and at a profit to himself. He took in second-hand machines on the sales of new machines of the company and as part purchase price of the new machines, then disposing of the same on his own terms and for his own profit.

"The evidence discloses further that the plaintiff retained no control over the activities of Stradford, nor did it in effect attempt to exercise any control over him. The plaintiff required reports to be made of the sales made by Stradford and of the moneys coming into his hands. He was also authorized to make collections for the company on old accounts, receiving a commission for his activities in that line.

"Do the above facts disclose that Stradford has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact? This provision of the law, in the opinion of the court, is a mere restatement of the common law relationship of master and servant. There is much law on this question of what constitutes such an employment, which question is fully discussed in the case of Vient vs. State Industrial Accident Commission, 123 Oregon 334. In that case it was held that the workmen were independent contractors, although the principal exercised considerably more control over them than the plaintiff did over Stradford in the case at bar. The court in approving a previous decision of the court, endorsed the rule as follows:

" 'The relation that must exist to constitute one person an employer and another person a workman, under the compensation act, is the relation of master and servant, and this relation originates wholly in contract, although the contract may be either express or implied. There must be a contract of hire. The services which the servant contracts to perform are personal services, and the master must have the right to direct and control the details of the work and the manner and mode of its performance.'

"The whole trend of legislation in Oregon involving employer and employee, as evidenced by the Employers' Liability Act, Workmen's Compensation Law, etc., revolves around the common law relationship of employer and employee. It seems to me that the Legislature in enacting Subdivision (1) of Section 2, (f)

(E), had in mind the well-understood relationship of master and servant, for throughout the Act the words 'employer', 'employee', 'payroll', 'wages', and 'contract of hire' are used. Since the facts conclusively show that said Stradford was a free agent, so far as this provision is concerned, he would not be under the Act, nor would he be entitled to the benefits secured by the Act.

"The next question to be decided is whether or not Stradford was customarily engaged in an independently established business of the same nature as that involved in the contract of service. This provision of the law has been the subject of much judicial discussion, and its interpretation has given rise to much contrariety of opinion among the various courts entertaining the subject. The appellate courts in the states of Colorado, Utah, and North Carolina, respectively, in the cases of Industrial Commission vs. Northwestern Mutual Life Insurance Co., 88 P. (2d) 560, Globe Grain & Milling Co. vs. Industrial Commission, 91 P. (2d) 512, and Unemployment Compensation Commission vs. Jefferson Standard Life Insurance Co., 2 S. E. (2d) 584, have held that this provision has nothing to do with the common law relationship of master and servant and must be strictly construed according to the tenor of the language, and that unless all the tests or conditions concurred, the workmen would not be excluded from the status of employment as defined by the Act, while the higher court of Washington in the case of Washington Recorder Publishing Company vs. Ernst, 91 P. (2d) 718, has held that this provision must be construed with the other conditions or tests, and that they all merely redefine the common law relationship of master and servant. It is unnecessary for this court to undertake a Solomon role to determine which school of thought is correct so far as the Oregon law is concerned, because the evidence discloses that Stradford was in fact customarily engaged in an independently established business within the purview of the statute. His contract of service involved the sale of sewing ma-

chines and other merchandise consigned to said Stradford for sale. The evidence discloses that in the sale of new machines of the company, on different occasions he took in second-hand sewing machines as part purchase price on a new machine, and that these second-hand machines became his own property, and that, as opportunity afforded, he sold these sewing machines so acquired on his own terms, on his own time, and for his own profit. Obviously, then, he was customarily engaged in an independently established business of the same nature as that involved in the contract of service.

"It appearing, therefore, that the services performed by said Stradford for the Singer Sewing Machine Company were not such as to bring him under the unemployment compensation law, the decision of the Unemployment Compensation Commission was erroneous * * *."

RAND, C. J., concurs in this dissenting opinion.

---

Argued on rehearing June 10; former opinion adhered to
September 9, 1941

ON REHEARING

(116 P. (2d) 744)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

On rehearing.

FORMER OPINION ADHERED TO.

*H. Lawrence Lister*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and Ralph H. Campbell, Assistant Attorney General), for appellants.

*Walter L. Tooze*, of Portland, for respondent.

*John W. Reynolds, A. F. Flegel, Jr.,* and *A. S. Vosburg*, all of Portland, amici curiae.

KELLY, C. J.   It is with regret that the determination of this case on rehearing has been so long delayed. Sickness and death have prevented a hearing by the full bench. It was deemed desirable by the writer, if possible, to have such a hearing and hence the delay. When further delay appeared to be futile, the case was set for argument and a hearing was had. Thereupon, both parties sought, and were granted, permission to file supplemental briefs. The last memorandum tendered was offered by plaintiff on July 24, 1941. This is said by way of explanation and not as a reflection upon the course taken by anyone.

There are five major grounds assigned for asking that the original opinion herein be overruled:

1.   The findings of fact are erroneous and insufficient upon which to grant claimant's demand for compensation.

2.   The statute, upon which the claim for compensation herein is based is a taxing statute and must therefore be strictly construed.

3.   That inasmuch as the state law was enacted in compliance with the provisions of the federal statutes imposing a tax, the state could not extend the scope of the relief afforded so that it would benefit others than those so affected by the federal act.

4.   A proper construction of such statute necessarily results in holding that the common law relationship of master and servant must be shown to exist in order to entitle one performing services for the benefit of another to recover compensation under such statute; and

5.   The overwhelming weight of authority is to the effect that under such statute and the circumstances

attending claimant's services, claimant is merely an independent contractor and not entitled to prevail.

These grounds have been elaborated in the briefs of three amici curiae, and the plaintiff-respondent.

Omitting the title, the introductory paragraph and the decision, the findings of the commission are as follows:

"The Commission having examined the records, transcript of evidence and all exhibits filed with said commission, and being fully advised finds:

Claimant had been for some nine years acting as a salesman for the alleged employer, selling sewing machines, vacuum sweepers and other products of the manufacturer. The contract for the services, after the unemployment compensation law became effective, provided claimant should sell sewing machines, etc. on a commission basis.

The machines sold were consigned to the agent and remained the property of the company until sold. The agent was confined to a distinct territory in which he had exclusive sales rights, except as to schools and the like, with respect to which he was ordered or requested to make contracts and lay the groundwork for sales, but was allowed no commission. He was also required to make collections on conditional sales contract and delinquent accounts, on which actual collections he was paid a commission. The price of the merchandise was fixed as were the terms on which it was sold. The agent was authorized to purchase and sell accessories and attachments and to take in second hand machines which were retained and resold by him, the price allowed for such trade in machine being deducted from his cash commission. The contract provided the company had the right to establish the sales price of the trade in machines, although it appears it did not exercise that right in the instant case. The sales agent was directed to make collections upon the terms and conditions set forth and specifically ordered in each individual col-

lection and he was allowed no discretion whatsoever in this respect. Weekly written reports on the forms of the company giving a full and complete account of all business transacted by him in its behalf were required. The agent was also required to care for, repossess and deliver to the company any property the company desired repossessed.

Furthermore, the company made certain directions in respect to sales campaigns and in other respects, especially as to following up mailed advertisements. It is true the company insists these were merely suggestions; but as testified by the agent and corroborated by the sales supervisor, any material refusal on the part of the sales agent to follow such suggestions would have resulted in his dismissal. The sales agent was required to expend sufficient time and energy to secure sales sufficient to satisfy the company, or he would have been dismissed. The right of discharge existed.

The company insists the sales agent performed no services for such company in an employment subject to the unemployment compensation law but on the contrary was an independent contractor.

Section 2 (f) (E) of the Unemployment Compensation law of this state departs from the common law definition of an independent contractor in a very material respect. This subsection of the law reads:

Sec. 2 (f) (E). Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the Commission that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact, and

(2) Such individual is engaged in an independently established business of the same nature as that involved in the contract of service.

The preponderance of the testimony, both of the sales agent and of the sales supervisor is that a definite and material control and direction over the perform-

ance of sales agents' services existed. This is enough. He was not a free agent.

The testimony, moreover, has failed to show to the reasonable satisfaction of the commission that the sales agent was, at the time he performed such services for the company, engaged in an independently established business of the same nature as that involved in the contract of service.

While it may be true the sales agent may have had the right to engage in an independently established business in addition to his contract of service for the company, the fact remains that he did not do so.

The Commission therefore finds from the evidence that as to fact and law the claimants' services performed for the employer were in employment subject to the Act as defined by the statute.''

■ With due respect for those who differ, the writer thinks that there is testimony of a substantial nature supporting the findings of the commission, and that such findings are sufficient upon which to base the relief granted to claimant by the commission.

■ The writer is also of the opinion that the taxing feature of the unemployment compensation legislation is incidental rather than controlling; that the paramount purpose is one of relief under the police power.

■ As to the effect of the federal legislation upon the construction to be given to a state statute, such as the one under consideration, the writer is indebted to Mr. Justice Seawell of the supreme court of North Carolina for the following ruling:

''(1,2) The fact that the State has engaged in a cooperative scheme with the Federal Government does not necessarily imply strict uniformity in the incidence of the tax levied by the State and Federal Laws. Conformity in that respect is not a condition of approval of the State law under Title III Section 303, of the

Federal Act, 42 U. S. C. A. § 503. The so-called 'draft bills' present the minimum of requirement for such approval, but it is made clear that the several states are under no compulsion as to 'just what type of legislation it desires and how it shall be drafted'. In fact, under the decision of the highest Federal Court, the state was not coerced or compelled to pass any law at all, but presumably was induced to do so both because of a recognized social necessity, the offer of the Government of a gift in aid of the enterprise, and the advantage of credit on payment of the Federal taxes. Steward Machine Co. v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293; Carmichael v. Southern Coal and Coke Co., 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327. The Federal contribution is in the nature of a gift in aid which might as well have come from any other source of taxation and, correlatively, the employment tax collected by the Federal Government might have been expended for any other legitimate Federal purpose. Considering the social security intended to be afforded by the State and Federal laws in their joint adventure, these laws are sufficiently coordinated, provided there is within the State sufficient reciprocity between the employment upon which the tax is levied and those who receive its benefits. In the construction which the Court has given the State Unemployment Compensation Law, this balance is not disturbed.

(3) Once having entered the field of social security of this kind, the State Legislature was not required to conform in every respect to the national ideology on the subject as expressed in the acts of congress." *State ex rel. Unemployment Compensation Comm. v. National Life Ins. Co.*, decided May 21, 1941, 219 N. C. 576, 14 S. E. (2d) 689.

The writer realizes that there are cases holding that the relation of master and servant must first be shown before services performed by an individual for

remuneration shall be deemed to be employment subject to the unemployment compensation act; but, with due respect to the learned and distinguished jurists who so construe the act the writer deems it no less than judicial legislation for the reason that, in his opinion, it interpolates a clause which is not in the statute, namely: where the common law relationship of master and servant is shown to exist. In reality, this construction amends the Oregon statute to read, *"Where the common law relationship of master and servant is shown to exist,* services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission", etc. The writer thinks that if the Oregon legislature had deemed the common law relationship of master and servant an essential prerequisite to a participation in the protection and benefits of the act in question that honorable body would have plainly said so as many other legislative bodies have.

The contention that the great weight of authority is contrary to the rule announced in the original opinion herein is based in part upon the argument that the doctrine of an opinion construing a statute is destroyed by a subsequent amendment of that statute.

Plaintiff argues that the Colorado authorities were thus annulled and plaintiff's counsel, in referring to the North Carolina case of *Unemployment Compensation Commission v. Jefferson Standard Life Insurance Co.*, 215 N. C. 479, 2 S. E. 2d 584, said:

"The North Carolina Legislature did precisely what the Colorado Legislature did when the Colorado Supreme Court rendered its decision. The Legislature amended the law and destroyed the effect of it."

Last May, the North Carolina supreme court evidently had not heard how effectively their construction of the North Carolina statute had been destroyed for, speaking through Mr. Justice Seawell in an opinion to which there is no dissent, the North Carolina court say:

"(4) The exhaustive opinion in Unemployment Compensation Commission v. Jefferson Standard Life Insurance Co., supra, commits this court to the view that our unemployment compensation act, which is similar to those of the majority of the states where this form of social security obtains, does not confine taxable employment to the relation of master and servant. 'The scope and purpose of the present act are exceptional in breadth. The draftsmanship of the definition section, which gives flesh and sinew to the whole, shows a carefully considered and deliberate purpose to leap many legal barriers which would halt less ambitious enactments. As far as language will permit it, the Act evinces a studied effort to sweep beyond and to include, by re-definition, many individuals who would have been otherwise excluded from the benefits of the Act by the former concepts of master and servant and principal and agent as recognized at common law.' Unemployment Compensation Commission v. Jefferson Standard Life Ins. Co., supra (215 N. C. 479, 2 S. E. 2d 589); Industrial Commission of Colorado v. Northwestern Mutual Life Ins. Co., 103 Colo. 550, 88 P. 2d 560; McDermott v. State, 196 Wash. 261, 82 P. 2d 568; Globe Grain & Milling Co. v. Industrial Commission, 98 Utah 36, 91 P. 2d 512; In re Mid America Co. D. C. 31 F. Supp. 601; (citing Jefferson Standard case.) National Tunnel & Mines Co. v. Industrial Commission of Utah, 102 P. 2d 508; In the matter of Schomp and Board of Review v. Fuller Brush Co., 124 N. J. L. 487, 12 A. 2d 702; Equitable Life Insurance Company of Iowa v. Industrial Commission of Colorado, 105 Colo. 144, 95 P. 2d 4.

How much wider may be its scope is a matter to be determined in the particular case.

(5) We think it is self-evident that the legislature, for the purpose of levying the tax, may determine what shall constitute employment subject to taxation, without regard to existing definitions or categories.''

&ast; &ast; &ast; &ast; &ast;

''It has not been our purpose to elaborate or enlarge on the opinion in Unemployment Compensation Commission v. Jefferson Standard Life Ins. Co., supra, in which the court decided the points at issue in the case at bar contrarily to the view contended for by appellant. We only restate its conclusions in view of the renewed assault. Many courts have relied on its authority and adopted its views. We see no reason to overrule a decision so carefully considered and so recently made.'' *State ex rel. Unemployment Compensation Comm. v. National Life Ins. Co.*, supra.

It will be observed that the North Carolina court were also unaware of the rule that an amendment of a statute subsequent to a construction thereof by the court of last resort destroys the correctness of such judicial construction, because the North Carolina court support their opinion as above quoted by citing the Colorado cases of *Industrial Commission of Colorado v. Northwestern Mutual Life Ins. Co.* and *Equitable Life Ins. Co. of Iowa v. Industrial Commission of Colorado*, notwithstanding their purported legislative annihilation. To the writer the action of the Colorado legislature was a recognition of correctness of the court's construction of the original act and an expression that the same should be amended, not by the court, but by the legislature.

It is also argued by the Singer Sewing Machine Company, plaintiff and respondent herein, that the

case of *Globe Grain and Milling Co. v. Industrial Commission of Utah*, 98 Utah 36, 91 P. 2d 512, was overruled by the case of *Fuller Brush Co. v. Industrial Commission of Utah*, 99 Utah 97, 104 P. 2d 201, 129 A. L. R. 511. The writer is unable to concur in such construction of the Fuller Brush Company case, in which case the appeal tribunal and the industrial commission found specifically that the claimant, Mr. Holst, was free from all direction or control over the performance of his services, both under his contract and in fact, and that his services were performed outside the places of business of the company.

In the earlier Utah case of *Globe Grain and Milling Company v. Industrial Commission of Utah*, while the supreme court of Utah expressed some doubt whether the commission was correct in holding that the evidence did not satisfactorily show that the claimant, Mr. Thomas, had been free from control in the performance of his services, the court, nevertheless, declined to determine that question, because the court were of the opinion that the testimony did not disclose that the claimant was customarily engaged in an independently established business at any time during his incumbency with the petitioner and especially at the time his services terminated.

In the Globe Grain and Milling case, the Utah court said:

"There was no question but that Thomas performed services for the petitioner and that he received 'wages' as wages are defined by Section 19 (p) of the act. Section 19 is a section on definitions and provides a glossary which pertains to the act. These definitions may differ from the common law concepts designated by the same words. The above quoted Section 19 (j) (5)

signifies a relationship entitled to benefits of the act beyond that of a mere master and servant relationship."

The writer finds nothing in the Fuller Brush Company opinion which challenges the correctness of the statutory construction above quoted.

In the Fuller Brush Company case the court held that the claimant, Mr. Holst, did not perform personal services for wages *under the terms of the act.*

In the Fuller Brush Company case, the merchandise consisted of brushes which were sold to the dealer for cash and by him resold to purchasers at an advanced price. If a dealer were unable to pay cash, he was allowed credit for one weekly order of brushes, provided he first furnished a credit bond or undertaking in the sum of $200 to insure payment. The company suggested retail prices for the various articles but the dealer was not required to adhere thereto. The dealer set his own hours for work, the order of work and methods of work. He made no work report to the company and received no orders or directions from it. He made no reports of sales, furnished the company no list of his customers or record of his accounts with them. Any good will he built up was his own and not the company's. He could sell for cash or credit without knowledge of the company, and upon determination of his contract gave the company nothing except payment for the merchandise he had received. A new dealer in the territory had to build his own business, find his own customers and begin all over again without any knowledge of the business done by his predecessor in the territory.

We quote from the prevailing opinion by Mr. Justice Larson:

"That claimant performed personal service is not in dispute, but there is a dispute as to whether such services were performed for plaintiff or for self, and as to whether he received wages therefor or profits on sales. In other words, was the relationship between plaintiff and claimant that of employer and employee or that of vendor and vendee? The finding being positive and definite that claimant in the performance of the personal service was free of all direction and control by plaintiff, both in fact and under his contract of hire, it must follow of necessity that he did not perform service for plaintiff under a contract of hire or for wages, and therefore the relationship was one that never came within the scope of the act because he was not in employment that would bring him within the act, to-wit, rendering personal services for another under a contract for hire for wages. Since there was no obligation on plaintiff to pay claimant any remuneration for services, but claimant must get his remuneration, if any, from his ability to sell the brushes at an advanced price over the cost to him and that he and not plaintiff assumed the risk of profit or loss on the venture or undertaking, it follows that claimant's services were not rendered for wages or under a contract of hire."

The writer thinks that the foregoing quotation clearly distinguishes the earlier case of Globe Grain and Milling Company from the Fuller Brush Company case decided by the Utah court. It also indicates to the writer that the latter case is not in point here.

To make more manifest the distinction between the two Utah cases last mentioned, the writer quotes from the opinion in the Globe Grain and Milling Company case:

"The material facts involved in this controversy are these: Some four or five years before the hearing

in April, 1938, Albert E. Thomas met F. E. Clark, then occupying a managerial position with the Globe Grain and Milling Company, they entered into an arrangement whereby Mr. Thomas was to undertake to sell certain prepared sheep feed, referred to in the record as pellets, he to receive one dollar per ton for all pellets sold by him for the company. The company supplied Mr. Thomas with business cards, stationery, company order books, samples, and stamps, and paid the expense of telephone calls by him to the Ogden office. For a period of about three months he was permitted to use an automobile belonging to the company. Thereafter no such transportation was furnished. The arrangement having been entered into, Thomas engaged a room at the Cullen Hotel. This hotel is generally recognized as a sort of headquarters for sheep and cattlemen. There samples of the feed were kept by Thomas for exhibition and for inspection by prospective purchasers. Thomas was to pay and did pay for his room and all other expenses. He was not required to operate from any particular place. In 1937 he moved to another hotel.

Advances were at times made to him upon order submitted but not collected for when the purchaser's credit was regarded as good. The company fixed the price at which the pellets were to be sold and all sales made on credit were subject to approval by the company. Orders were taken on company order forms. Sales and shipments were direct to the purchaser from the company plant at Ogden, Utah. Thomas was restricted as to the territory in which he was permitted to operate. During the early part of his connection with the company he was assisted in making contacts and in his sales endeavors by a salaried representative of the company. There was no requirement as to the number of hours or the portion of the day he should work. On a number of occasions Thomas was requested by the company to, and did, contact individuals to whom he had made sales to urge payment of over due accounts. The arrangement between Thomas and the

company could be terminated at the will of either party." *Globe Grain and Milling Company v. Industrial Commission*, supra.

To the writer the facts in these two Utah cases are so at variance that under no circumstances could the doctrine of the latter case be deemed to overrule the former.

The effect of the opinion in *In re Mid America Co.*, 31 Fed. Supp. 601, is claimed by plaintiff to have been annulled by the case of *Indian Refining Co. v. Dallman*, 31 Fed. Supp. 455, and the case of *Texas Co. v. Higgins*, 32 Fed. Supp. 428.

The writer is unable to ascribe any such result as having ensued because of the opinion in the last two cases above mentioned.

The case entitled, *In re Mid America Co.*, supra, is one wherein the Illinois Unemployment Compensation Act is construed. The writer ventures to quote from the opinion in that case:

"A further objection of the trustee to the Director's claim is that the services performed for him by Charles Hall, Orrie Butterfield and Raymond Ketchum were those of independent contractors, and hence, the remuneration received by them was not subject to contributions in accordance with the Illinois Unemployment Compensation Act.

Section 2 (f) (5) of the Illinois Unemployment Act provides:

'Services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Director that—

'(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

'(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

'(C) Such individual is engaged in an independently established trade, occupation, profession or business.'

(13, 14) The General Assembly, by providing a glossary in the Illinois Unemployment Compensation Act, adopted a statutory definition of employment more inclusive than the common law relationship of master and servant. There can be no doubt that the General Assembly had the authority to so implement the Illinois Unemployment Compensation Act even if the statutory definitions differ from those at common law. Southern Photo & Blue Print Co. v. Gore, 173 Tenn. 69, 114 S. W. 2d 796; Steinberg v. United States, 2 Cir. 14 Fed. 2d 564; In re Monrovia Evening Post, 1926, 199 Cal. 263, 248 P. 1017, 1020; De Witt, et al v. State ex rel Crabbem 1923, 108 Ohio 513, 141 N. E. 551; O'Boyle, et al v. Parker-Young Co. 95 Vt. 58, 112 A. 385; McDonald v. Levinson Steel Co. 1930, 302 Pa. 287, 153 A. 424; Fisk v. Bonner Tie Co. 1025, 40 Idaho 304, 332 P. 569; Flick v. Industrial Comm. of Colorado, 78 Colo. 117, 239 P. 1022; Chicago & Eastern Ry. Co. v. Kaufman, 1921, 78 Ind. App. 474, 133 N. E. 399; Gallivan v. Wark Co., 1927, 288 Pa. 443, 136 A. 223; McDowell v. Duer, 1922, 78 Ind. App. 440, 133 N. E. 839; Industrial Comm. v. Continental Investment Co., 1925, 78 Colo. 399, 242 P. 49; Fox v. Standard Oil Co. 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780. It must be observed that the term independent contractor is nowhere used in the statute. The issue to be decided, therefore, is not whether the aforementioned individuals were independent contractors, or whether the common law relationship of master and servant existed, but, whether their services constituted 'employment' as defined by Section 2 (f) (5) of the Illinois Unemployment Act quoted above. Industrial Commission of the State of Colorado v. Northwestern

Mutual Life Insurance Co. 103 Colo. 550, 88 P. 2d 560; Employment Compensation Commission of North Carolina v. Jefferson Standard Life Ins. Co., 215 N. C. 479, 2 S. E. 2d 584.''

The case of *Indian Refining Co. v. Dallman*, supra, affords a construction of Sections 801 and 804 of Title VIII, 42 U. S. C. A. §§ 1001, 1004, which is now known as the Federal Insurance Contribution Act; and Section 901 of Title IX, 42 U. S. C. A. § 1101, which is now known as the Federal Unemployment Tax Act; together with the Social Security Act and the regulations defining the term employment, known as 90, and 91, which were duly prescribed and approved by the commissioner of internal revenue pursuant to the provisions of said two titles and other provisions of the internal revenue laws.

The writer quotes from the opinion:

''In both of said regulations [90 and 91] it was specifically provided that to constitute an 'employment' under the provisions of said two titles, 'the legal relationship of employer and employee must exist.' By said regulations certain rules were stated in accordance with which it could be determined whether such legal relationship exists. Those regulations contain the following provisions; '* * * Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done, but how it shall be done.' ''

There is such a wide divergence in the statute of Illinois construed in the Mid America case, supra, from the federal statutes and regulations construed in the

case of *Indian Refining Co. v. Dallman*, supra, that the writer thinks there is no conflict between the two cases.

The case of *Texas Co. v. Higgins*, supra, construes the same federal statutes and regulations as those controlling the Indian Refining Company case, and follows the rule there announced.

The writer thinks that the foregoing outline of the factors claimed by plaintiff to destroy the effect of the authorities cited in the original opinion, as supporting it, discloses that none of those authorities has been modified or overruled.

The two Washington cases cited in the opinion disclose an unsettled state of the law there.

The case of *Farwest Taxicab Service Inc.* decided June 6, 1941, 114 P. (2d) 164, and the case of *Mulhausen v. Bates*, 114 P. (2d) 995, decided June 21, 1941, seem to indicate the relationship of the claimant to the one sought to be charged under the Unemployment Compensation Act of Washington is to be determined by the provisions of that act. At any rate, these recent cases disclose that the law in the state of Washington was not settled by the Recorder case.

In addition to the Colorado, Utah, Federal, Washington and North Carolina cases cited in the original opinion and herein, there is the case of *McKinley v. R. L. Payne & Son Lumber Co.*, 200 Ark. 1114, 143 S. W. 2d 38. There is also the case of *Schomp v. Fuller Brush Co.*, 124 N. J. L. 487, 12 A. 2d 702, decided by the supreme court of New Jersey, which decision was adopted May 1, 1941, by the Court of Errors and Appeals of New Jersey, 126 N. J. L. 368, 19 A. 2d 780; and also the case of *Young v. Bureau of Unemployment Com-*

*pensation*, decided by the Court of Appeals of Georgia on July 5, 1940, 63 Ga. App. 130, 10 S. E. 2d 412.

It appears to the writer that support of the rule announced in the original opinion emanates from Utah, Arkansas, Colorado, Georgia, North Carolina, Washington and New Jersey.

From states having statutory provisions, similar to those of the Oregon statute, contrary authority is found in Missouri, Mississippi, Nebraska, Wyoming, Washington, Wisconsin and Tennessee.

To these, plaintiff adds Kentucky, Connecticut, Iowa and New York. The statutes of Kentucky and Connecticut specifically provide that the relation of employer and employee must be shown in order to place the claimant under the protection of said statutes and hence those authorities are not in point. The Iowa statute provides that freedom from control only need be shown in order to exclude claimant from the benefit of the act.

As the writer reads the New York authorities, they seem to be unsettled.

The cases thus cited by plaintiff are the following: *A. J. Meyer & Co. v. Unemployment Compensation Com. et al.*, 152 S. W. 2d 184; *Texas Co. v. Wheeless et al.*, 185 Miss. 799, 187 S. 880; *Hill Hotel Co. v. Kinney*, 138 Neb. 760, 295 N. W. 397; *Unemployment Commission v. Matthews*, 56 Wyo. 479, 111 P. 2d 111; *Washington Recorder Publishing Co. v. Ernst*, 199 Wash. 176, 91 P. 2d 718, 124 A. L. R. 667; *Wisconsin Bridge and Iron Co. v. Ramsay*, 233 Wis. 467, 290 N. W. 199; *Texas Co. v. Sidney H. Bryant*, (Tenn.) not yet reported; *Barnes, et al. v. Indian Refining Co.*, 280 Ky. 811, 134 S. W. (2d) 620; *Northwestern Mut. Life Ins. Co. v. Tone*, 125 Conn. 183, 4 A. 2d 640, 121 A. L. R. 993; *Robert C. Buell & Co.*

*v. Donaher*, 127 Conn. 606, 18 A. 2d 697; *Moorman Mfg. Co. v. Unemployment Comp.*, 230 Iowa 123, 296 N. W. 791; *Levine v. Aluminum Cooking Utensil Co., Inc.*, 258 App. Div. 1023, 17 N. Y. S. 2d 434, affirmed in 283 N. Y. 577, 27 N. E. 2d 439; *Glielmi v. Netherland Dairy Co.*, 254 N. Y. 60, 171 N. E. 906; *Litts v. Risley Lumber Co.*, 224 N. Y. 321, 120 N. E. 730, 19 A. L. R. 1147.

Other interesting New York cases are: *In re Morton*, 284 N. Y. 167, 30 N. E. 2d 369; *In re Scatola*, 282 N. Y. 689, 26 N. E. 2d 815; *In re Dellapenta (Hotel Statler Co., Inc. v. Miller)*, 261 App. Div. 863, 24 N. Y. S. 2d 748; *Ajello v. Savarins Management, Inc.*, 259 App. Div. 949, 19 N. Y. S. 2d 886; *In re Rogavin's Claim*, 259 App. Div. 774, 18 N. Y. S. 2d 302.

To the writer, it is not fair to the authorities, cited herein, to say that the weight is overwhelmingly in favor of either side. They are not harmonious and hence one's duty is done when he adopts those which seem to him to be supported by the better reasoning.

■ This writer is of the opinion (1) that the statute embraces other relations than merely master and servant as understood at common law; (2) the services performed by claimant for plaintiff were of such a character that under the terms of the statute they are to be deemed employment; and (3) it has not been shown either claimant was free from control or direction over the performance of such services or that claimant customarily was engaged in an independently established business of the same nature as that involved in the contract in suit. Vol. 8, O. C. L. A., section 126-702, sub-div. (E), p. 1386.

■ The writer thinks that business arising only out of and on account of such contract is not "independently established business". Concededly, no other busi-

ness was customarily or otherwise conducted by claimant in the instant case.

For these reasons, the writer thinks that the original opinion should not be overruled.

Mr. Justice BELT did not participate in this opinion.

Mr. Justice RAND dissents.

RAND, J. (dissenting): For the reasons stated in the former opinion written by Mr. Justice BELT and concurred in by me, I dissent.