Argued April 8, reversed July 8, 1959

# STATE UNEMPLOYMENT COMPENSATION COMMISSION *v.* BATES

341 P. 2d 119

*Roland V. Brown*, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, E. Nordyke and Harry G. Spencer, Assistant Attorneys General, Salem.

*Sam F. Speerstra*, Salem, argued the cause for respondent. On the brief were Rhoten, Rhoten and Speerstra, Salem.

Before McAllister, Chief Justice, Rossman, O'Connell and Crawford, Justices.

ROSSMAN, J.

This is an appeal by the State Unemployment Compensation Commission from a judgment which the circuit court entered in favor of the defendant, Walter E. Bates, after it had sustained the defendant's motion for a directed verdict. The commission, which avers that the defendant is an employer within the meaning of ORS 657.025, instituted this action to recover from him sums which it says are due to it as employer contributions under the Unemployment Compensation Act,

ORS chapter 657. The primary issue submitted by the appeal is whether the various workmen, such as lathers, plumbers and roofers, who performed work in constructing houses for the defendant are his employees, as the commission avers, or are independent contractors, as the defendant claims.

The following are the sections of the Unemployment Compensation Act which are material to the issues before us:

ORS 657.025 (1) "* * * 'employer' means any employing unit which * * * employs two or more individuals in an employment subject to this chapter in any one day in each of six separate weeks during any calendar quarter in any calendar year during which its total payroll amounts to $1,800 or more for such year. * * *"

ORS 657.030 "* * * 'employment' means service for an employer * * * performed for remuneration or under any contract of hire, written or oral, express or implied."

ORS 657.040 "Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commission that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service."

The only evidence before the trial judge when he sustained the defendant's motion for a directed verdict came from two witnesses produced by the commission. As transcribed, it covers only twenty pages. One of the two witnesses was an employee of the commission whose testimony was not concerned with the problem

submitted by the appeal—that is, the nature of the relationship between the defendant and those who constructed the houses. The other witness was the defendant.

The defendant testified that all of the workmen who helped construct the houses which he built performed their services "upon a contract basis." At times the purported contracts were termed "bid proposals." None of the instruments was introduced in evidence and their terms were not disclosed during the trial. It developed shortly that in many instances the so-called contracts were not prepared or signed until after the work had been performed. The defendant explained that circumstance by saying:

> "* * * We had to have some way of proving that these men completed these contracts on strictly their own. * * * Many of these contracts in 1956 had been done, had been performed without a written form."

According to the defendant, he supplied in most instances the material used in the construction of the houses but the workmen furnished their own tools and equipment. The defendant testified that he handed the workmen blueprints—seemingly for the purpose of guiding them in the performance of their work. The defendant admitted that the men were permitted to depart from the blueprints if they obtained the defendant's or his wife's approval. The defendant's testimony indicates that the workmen, for the most part, served regularly over long periods of time. By way of illustration he said:

> "* * * The same floor layer laid floors for me for 10 years—15 years on a contract basis."

He thought that "a day to two or three weeks" was re-

quired for the completion of the undertakings, depending upon the nature of the work.

According to the defendant, he could not terminate upon his own volition any of the so-called contracts. He testified:

"\* \* \* They would have to complete the job, or if I were to terminate them during the course of the contract, I would be liable for the full amount of that contract to them as independent contractors. That would be my understanding of it. \* \* \*"

The fact that he was the one who furnished the materials seemingly caused him to be asked:

"But if you were dissatisfied, you could stop their supplies?"

to which he answered:

"No. That would be just cutting my own throat. \* \* \*"

The record, as we have said, does not include a copy of the purported "contracts" into which the defendant and the workmen entered, nor does it disclose the terms of those papers. The defendant, however, swore that the men were not paid upon an hourly basis. He said that they were paid:

"By a piece or by a job basis.

\* \* \*

"They were paid by the job. We broke each job down, or each unit down into its natural categories—plumbing, wiring, flooring, roofing—and let a contract on each specific phase of that work. \* \* \*"

The evidence does not show that any of the workmen who rendered services to the defendant had "an independently established business" as that term is employed in ORS 657.040 (2) unless an inference to

that effect can be drawn from the following testimony given by the defendant:

> "Q They worked for you as employes before going to the hospital?
>
> "A Never as an employe. Always as a subcontractor, just as they worked for everyone else as a subcontractor."

Unless the words "worked for everyone else as a subcontractor" indicate that the men had "an independently established business," we know of nothing in the record which tends to establish that needed fact. The evidence does not reveal the name of any one except the defendant for whom any of the men worked nor does it reveal whether any of them had a shop or employees of his own who helped him perform the undertakings which the defendant termed subcontracts. It does not even indicate whether the men performed personally the defendant's work or did it through others. Subcontractors frequently choose for their business ventures assumed names; if any of the men who performed services for the defendant had a little enterprise of his own and had selected a name for it the evidence makes no mention of the fact. No one mentioned whether the workmen set their own hours for beginning and ending the day's labor or were required to conform to a schedule established by the defendant. Nothing indicates whether the men were paid weekly, in the manner that is common among employees, or were paid at the close of the job after presentation of a statement.

The above is a summary of the evidence.

■ Although some courts determine the issue of employee v. independent contractor by common-law tests, this court, as well as many others, uses the rule that

the statutory tests set forth in the Unemployment Compensation Act must be employed in the determination of that issue: *Singer Sewing Machine Company v. State Unemployment Compensation Commission*, 167 Or 142, 103 P2d 708, 116 P2d 744, 138 ALR 1398; *Rahoutis v. Unemployment Compensation Commission*, 171 Or 93, 136 P2d 426 and *Journal Publishing Company v. State Unemployment Compensation Commission*, 175 Or 627, 155 P2d 570.

■ In *Rahoutis v. Unemployment Compensation Commission,* supra, the question arose as to the effect, if any, which should be given to the commission's finding that the defendant was an employer. The decision held that in actions such as this the finding is entitled to no weight. The commission does not now argue against that holding but contends that when it has presented evidence showing that service was rendered, the defendant has the burden of establishing that he comes within the exceptions set forth in ORS 657.040. The Rahoutis decision so held, and we remain satisfied with that conclusion. See to the same effect *Young v. Bureau of Unemployment Compensation,* 63 Ga App 130, 10 SE2d 412.

■ We see from the above that the commission showed by the testimony of the defendant that many individuals performed services for him (compare *Journal Publishing Company v. SUCC,* supra, where the issue was whether there was a "service" relationship or a "vendor-vendee" relationship) and thereby brought the case within the first paragraph of ORS 657.040, above quoted. That being true, the burden was cast upon the defendant to establish that each workman, whom he claimed was an independent contractor, was "free from control or direction" by him and had

"an independently established business," as those terms are used in ORS 657.040.

It is difficult in many instances to determine whether a workman whose status is under analysis is an employee or an independent contractor. Possibly the person for whom he is rendering a service, say in the construction of an object, in order to be assured of a product of superior merit, retained a considerable amount of control over the manner in which the work was to be performed. That fact may render it difficult, if we employ common-law standards (Restatement of the Law, Agency, § 220), to decide whether the workman was an employee or an independent contractor.

The Unemployment Compensation Act deals with a social problem, that is, the economic condition of a working man when he becomes unemployed. Definitions of the term "employee" which are used in tort actions and produce there desirable results may not yield in unemployment compensation cases the results which the authors of the act intended it should produce. The act, therefore, contains its own set of definitions and, as we have seen, those definitions must be employed. As *Singer Sewing Machine Company v. State Unemployment Compensation Commission*, supra, held, the tests set forth in the act impose something more than the common-law standard of master and servant. However, common-law tests must not be completely ignored. The definitions set forth in the act supplement and augment the common-law tests.

A man who works for a daily wage is frequently dependent upon it for his livelihood and may be unable to cope with the vicissitudes of a period of unemployment; but one who has "an independently established business," as that term is employed in ORS 657.040,

may be able to deal with a long-continued period of adverse economic conditions without experiencing severe evil results. Accordingly, the act provides benefits for only the employee.

Writers have commented upon the subject of inquiry to which we just adverted. For example, Jacobs, "Are 'Independent Contractors' Really Independent?" 3 DePaul L Rev 23, states:

"* * * There is obvious agreement that in any context, federal and state laws applicable to employees should not be applicable to self-employed entrepreneurs or similarly classified individuals who earn their livelihood as independent businessmen of one kind or another. The latter are clearly outside the societal groups to which these federal and state enactments were intended to be applied."

Wilcox, "The Coverage of Unemployment Compensation Laws," 8 Vanderbilt L Rev 245, points out:

"The boundary of coverage marked by the word 'employment' in the federal law and by analogous provisions of state laws corresponds—though sometimes none too closely—to the boundary of the risk against which unemployment compensation affords protection. For the man who works for himself, unlike the man who works for another, is not exposed to the risk of unemployment in the ordinary sense of the term. The hazards faced by the entrepreneur are typically of a quite different kind from those faced by the employee, and are not such as unemployment compensation is designed to meet. * * * "

Recent Cases, appearing in 37 Or L Rev 88, says:

"* * * In these cases it is recognized that the social evils which Congress attempted to correct in the legislation involved should be the primary consideration in determining whether an employee is a servant or an independent contractor.

"Likewise, in construing the definition of an em-

ployee under the workmen's compensation acts, it has been held that these acts must be construed liberally to effect their purpose and to extend their benefits to the largest class of employees. *Livingston Worsted Co. v. Toop*, 48 R.I. 368, 138 Atl. 183 (1927) ; *O'Bannon Corp. v. Walker*, 46 R.I. 509, 129 Atl. 599 (1925). In making the distinction between a servant and an independent contractor under the New York Workmen's Compensation Act, the New York Supreme Court held that the common-law test of control was not controlling, on the ground that, if the test were applied, it would defeat the purpose for which the legislature had passed the statute. *In re Rheinwald*, 168 App. Div. 425, 153 N.Y. Supp. 598 (3rd Dep't 1915), *rehearing denied*, 175 App. Div. 957, 161 N.Y. Supp. 1142 (3rd Dep't 1916). However, this view was disapproved when the California Supreme Court refused to follow the *Rheinwald* case in *Western Indemnity Co. v. Pillsbury*, 172 Cal. 807, 159 Pac. 721 (1916). In considering a servant's rights under the Washington Unemployment Compensation Act, it was said by the dissent that the relationship of master and servant is to be measured by the statutory definition, not the common-law definition, and that the former does not embody the latter. *Washington Recorder Publ. Co. v. Ernst*, 199 Wash. 176, 91 P.2d 718 (1939)."

A proposed set of United States Treasury rules which was intended to render more certain the meaning of legislative provisions such as ORS 657.040 appears in 12 Fed Register 7966 (Nov. 27, 1947). The publication has received favorable comment. We quote the part which we deem applicable to the issue before us:

"The term 'employee' is not a word of art having a definite meaning. The relationship of employer and employee for the purposes of the social security legislation and the regulations in this part is not restricted by the technical legal relation of 'master and servant,' as the common law has developed that

relation in all its variations; and at the same time the relationship of employer and employee does not include the entire area of rendering service to others.

"An individual performing services for a person is generally an employee of such person unless he is performing such services in the pursuit of his own business as an independent contractor. In most cases in which an individual renders services to a person, general understanding and usage make clear the status of that individual either as an employee of such person or as an independent contractor. For example, in most cases, miners, bus drivers, manual laborers, and garage, hotel and other service workers, as well as factory, office, and store workers, whether skilled or un-skilled, and whether the work is permanent or impermanent, are clearly employees of the persons for whom they render services, and such persons are clearly the employers.

"On the other hand, physicians, lawyers, dentists, veterinarians, building contractors, public stenographers, auctioneers, and others who follow an independent trade, business, or profession, in which they offer their services to the public, are in most cases clearly independent contractors and not employees. The typical independent contractor has a separate establishment distinct from the premises of the person for whom the services are performed; he performs services under an agreement to complete a specific 'job' or piece of work for a total remuneration or price agreed on in advance; at times and places and under conditions fixed by him, he offers his services to a public or customers of his own selection rather than a single person; neither he nor the person for whom the services are performed has the right to terminate the contract except for cause; he may delegate the performance of the services to helpers; he performs the services in or under his own name or trade name rather than in or under that of the person for whom the services are performed; the performance of the

services supports or affects his own good will rather than that of the person for whom the services are performed; and he has a going business which he may sell to another."

Restatement of the Law, Agency, § 220, to which we have referred, gives the following tests for the purpose of distinguishing a servant from an independent contractor:

"(1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer; and

"(i) whether or not the parties believe they are creating the relationship of master and servant."

It will be observed that the Restatement does not mention the right to terminate the relationship and attaches no significance to the matter of furnishing the materials. We believe that the following caution given by *Fahey v. Terp*, 235 Minn 432, 51 NW2d 173, is pertinent:

"It is not to be overlooked, however, that the factor or tests which are employed as aids in ascertaining the true relation of the parties are aids only and not ends in themselves, and they should always be applied in the light of the evidence as a whole and not as an instrument of disection whereby the evidentiary picture is torn apart and rebuilt in a manner foreign to the facts as they are actually related to each other."

We deem it unnecessary to proceed further. Although the defendant had the burden of establishing that the workmen whom he claimed were independent contractors had independently established businesses of the kind required by ORS 657.040, the record is devoid of proof to that effect. No finding is warranted, therefore, that any of those men were other than employees of the defendant. The circuit court erred when it sustained the defendant's motion for a directed verdict.

Reversed.